WALTER G. MORLEY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7031. Promulgated April 30, 1947.

*R. M. O'Hara, Esq.*, and *Harry A. Smith, Esq.*, for the petitioner.
*Cecil H. Haas, Esq.*, for the respondent.

912

OPINION.

KERN, *Judge*: As to the first and second issues petitioner contends that during each of the calendar years 1940 and 1941 he was "regularly engaged in the trade or business of buying and selling real estate, and generally dealing in real estate and in the operation of income-producing property." It is argued therefrom (1) that 2930 West Grand Boulevard, the Pallister & Churchill Streets property, and the 80-acre tract of land [1] were held by petitioner "primarily for sale to customers in the ordinary course of his trade or business" and thus were not capital assets as defined in section 117 (a) (1) of the Internal Revenue Code, or, in the alternative, that the buildings on the first two of those holdings were not capital assets under section 117 (a) (1), since they were "property, used in the trade or business, of a character which is subject to the allowance for depreciation," and (2) that no part of the deductible losses with respect to the West Grand Boulevard property or the Pallister property is excluded by section 122 (d) (5) [2] from petitioner's 1940 net operating loss, since that section only

---

[1] Petitioner does not contest respondent's determination that sale of the Osmun Street property yielded net gain rather than net loss, as reported by petitioner, and there is no dispute here as to the actual amount of loss sustained on the other dispositions in 1940 and 1941, or as to its apportionment between land and buildings.

[2] SEC. 122. NET OPERATING LOSS DEDUCTION.

(a) DEFINITION OF NET OPERATING LOSS.—As used in this section the term "net operating loss" means the excess of the deductions allowed by this chapter over the gross income, with the exceptions and limitations provided in subsection (d).

\* \* \* \* \* \* \*

(d) EXCEPTIONS AND LIMITATIONS.—The exceptions and limitations referred to in subsections (a), (b) and (c) shall be as follows:

\* \* \* \* \* \* \*

(5) Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall (in the case of a taxpayer other than a corporation) be allowed only to the extent of the amount of the gross income not derived from such trade or business. \* \* \*

excepts and limits allowable deductions which are "not attributable to the operations of a trade or business regularly carried on by the taxpayer."

We are of the opinion that during each of the calendar years 1940 and 1941 petitioner was engaged in the trade or business of selling real estate, and that 2930 West Grand Boulevard, the Pallister & Churchill Streets property and the 80-acre tract of land were held by petitioner "primarily for sale to customers in the ordinary course of his trade or business." These three properties, therefore, were not capital assets as defined in section 117 (a) (1).[3] *Richards* v. *Commissioner*, 81 Fed. (2d) 369, affirming 30 B. T. A. 1131; *Welch* v. *Solomon*, 99 Fed. (2d) 41; *Snell* v. *Commissioner*, 97 Fed. (2d) 891; *Ehrman* v. *Commissioner*, 120 Fed. (2d) 607; *Oliver* v. *Commissioner*, 138 Fed. (2d) 910; *Gruver* v. *Commissioner*, 142 Fed. (2d) 363, affirming 1 T. C. 1204; *A. R. Calvelli*, 43 B. T. A. 6; *Neils Schultz*, 44 B. T. A. 146; *Charles H. Black, Sr.*, 45 B. T. A. 204.

The record indicates that petitioner acquired each of the properties here in question with the intention of selling it at a profit. It does not appear that he purchased any of the properties with the purpose of realizing income from the rental thereof. Petitioner acquired the 80-acre tract of land not as a farm or an investment, but because he thought the interurban line would be established and that he would be able to realize profit on the sale of lots carved out of the farm acreage. Petitioner actually sold the Pallister & Churchill Streets property in 1920, and reacquired it in 1932 only after the vendee defaulted. The West Grand Boulevard property was purchased because he thought he would be able to resell it at a profit by reason of a demand for land in the vicinity of the Fisher Building which he expected to develop.

None of these transactions was "an isolated holding dissimilar from any other transaction and unrelated to the history of petitioner's activities * * *." See *Julius Goodman*, 40 B. T. A. 22. Petitioner carried on real estate operations for gain for many years prior to 1931. His operations were extensive, frequent, regular, and diversified from the standpoint of the number and type of properties involved. He realized substantial profits from his real estate operations prior to 1931. It is true that after 1931 petitioner's purchases and sales of property virtually ceased, but we are not convinced that he abandoned

---

[3] SEC. 117. CAPITAL GAINS AND LOSSES.

(a) DEFINITION.—As used in this title—

(1) CAPITAL ASSETS.—The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include * * * property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1).

his business of selling real estate. Petitioner's activity was not restricted or halted by reason of any change in his plans or purpose, but rather by the force of economic circumstances beyond his control and not of his making. The general business depression of the past decade was the reason for the curtailment of petitioner's activity. We can not ignore the realities of the situation. It was the depression which prevented petitioner from selling at a profit real estate which he had purchased for sale. The market for real estate in large industrial areas, such as Detroit, became virtually nonexistent during that period, and petitioner was compelled to become inactive as a seller of real estate until conditions improved so that he could work his way out of his difficulties and again sell at a profit the real estate which he had purchased. But before he was able to dispose of the properties here in question at a profit, petitioner was forced to sell or relinquish them at the substantial losses, which are now at issue. Although certainly not determinative of the problem here before us, we think that the resurgence of petitioner's activities with respect to the South Boulevard property shortly prior to the hearing of this case is a fact indicating that petitioner did not abandon his business of selling real estate, as is also the fact that petitioner has continued to keep his real estate broker's license alive.

The fact that petitioner was also engaged in other business activities did not preclude him from engaging in the real estate business at the same time, for an individual can be engaged in more than one trade or business. *Snyder* v. *Commissioner*, 295 U. S. 134, 139; *Oliver* v. *Commissioner, supra; Snell* v. *Commissioner, supra; Ignaz Schwinn*, 9 B. T. A. 1304, 1308.

Having sustained petitioner's first contention that the three properties here involved were not "capital assets" within the meaning of section 117 (a) (1), we need not consider petitioner's alternative contention with respect to the buildings on the West Grand Boulevard and Pallister & Churchill Streets properties.

With respect to the loss sustained in 1941 on the disposal of the 80 acres of land, petitioner's contention that the loss is deductible in 1941 as an ordinary loss is sustained.

Petitioner's losses in 1940 were attributable to the operation of a trade or business regularly carried on by the petitioner and, therefore, the taxpayer must be also sustained in his contention that no part of the deductible losses with respect to the West Grand Boulevard or the Pallister & Churchill Streets properties is excluded by section 122 (d) (5), *supra*, in the computation of his net operating loss carryover from 1940.

We are aware of the difference in phraseology between section 23 (e) and section 122 (d) (5), in that the latter, in addition to the

requirement that the loss be incurred in a trade or business, requires that it be attributable to a trade or business regularly carried on by the taxpayer. While we incline to the view that the business of selling real estate was one regularly carried on by petitioner in 1940, it is not necessary to our conclusion on this point for us to hold, or find, that the losses in question were attributable to the operation of a business regularly carried on by the taxpayer *in that year*. It is sufficient for our conclusion that we find, as we have done, that the losses in question were attributable to the operation of a business regularly carried on by petitioner. *Edgar L. Marston*, 18 B. T. A. 558; affirmed sub nom. *Burnet* v. *Marston*, 57 Fed. (2d) 611. Cf. *Lewis G. Carpenter*, 33 B. T. A. 1. There can be no question but that the business of buying and selling real estate was regularly carried on by petitioner prior to 1931. The properties here in question were purchased or acquired by petitioner for resale at a profit before that date. Even though we should assume, *arguendo*, that the business of selling real estate, although engaged in by petitioner in 1940, was not one regularly carried on by him in that year, nevertheless, we would conclude that the losses in question were attributable to a business of buying and selling real estate which was regularly carried on by him in years prior to 1940; and this conclusion would render inoperative the limitation of section 122 (d) (5).

The third issue is whether petitioner may deduct all of the allowable loss sustained on the disposition of the 80 acres of land in 1941, or whether, as respondent determined, he may deduct only one-half thereof, since the property was acquired and held by him and his wife as tenants by the entireties. Petitioner recites the axioms that substance prevails over form and that income is taxable to him who earns it, and he contends that, since he paid for the property from his own funds and at all times exercised dominion over it, and since title was taken jointly only for convenience, he was the real owner, sustained the whole loss, and is entitled to the entire deduction therefor.

Petitioner does not contend that the circumstances surrounding the acquisition and retention of this land render inoperative the rule of Michigan law that conveyance to a husband and wife creates a tenancy by the entireties. Petitioner understood at that time that such an estate was created by the conveyance of the land and it seems clear that his understanding was correct. *Commissioner* v. *Hart*, 76 Fed. (2d) 864; *Paul G. Greene*, 7 T. C. 142. With respect to their income tax effect, circumstances of acquisition similar to those here were recently considered by us in *Paul G. Greene*, *supra*, and they were held not to vary the well settled rule that income from an estate by the entireties under the laws of Michigan is taxable one-half to each

of the tenants. See also *Commissioner* v. *Hart, supra; H. D. Webster*, 4 T. C. 1169, 1174; *Herman Gessner*, 32 B. T. A. 1258. We think it follows as a necessary corollary thereto that petitioner, as tenant by the entirety of the land, may deduct only one-half of the allowable loss sustained on its sale. *Anna S. Whitcomb*, 37 B. T. A. 806, 812; affd., 103 Fed. (2d) 1009; *Edwin F. Sandberg*, 8 T. C. 423. We so hold.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

HILL, *J.*, dissenting: I disagree with the holding of the majority (1) that the loss sustained on the disposal in 1941 of an 80-acre tract of land was an ordinary and not a capital loss and (2) that petitioner sustained a net operating loss in 1940 entitling him to a deduction therefor in 1941.

The underlying question, determinative of both points, is whether the properties in respect of which loss deductions are claimed by petitioner were disposed of by him in carrying on the business of buying and selling real property.

The 80-acre tract of land in question was purchased in December 1925, four years before the 1929 "crash" which initiated the depression of the early 1930's. This property was purchased in anticipation of an enhancement of its market value as a subdivided residential area, based on the "talk" that a railroad would be built near the land. Apparently the purchase was deemed a good investment. The railroad was not built and petitioner did not subdivide the land or otherwise develop it for sale. Petitioner sold the land in 1941 and sustained the loss which he seeks to deduct as an ordinary, rather than a capital, loss. In my opinion, this property was a capital asset and the loss sustained thereon was a capital loss. Regardless of whether petitioner may be held to have been carrying on a real estate business in respect of other properties, I think the evidence establishes that this 80-acre tract was not held by petitioner for sale in the regular course of a real estate business and was not so disposed of by him.

The properties in respect of which the claimed net operating loss was sustained in 1940 are the Pallister & Churchill Streets property and the property at 2930 West Grand Boulevard, dealt with in the majority report.

The Pallister & Churchill Streets property was acquire by petitioner prior to 1920 and was sold by him in that year, subject to an outstanding mortgage which was assumed by the purchaser. Petitioner repossessed the property in 1932 because of the vendee's default in paying taxes and making the mortgage payments. Petitioner held and

operated the property as rental property until July 2, 1940, and then surrendered it to the mortgagee. The rental operation resulted in the various years thereof either in a loss or a very small profit. Petitioner endeavored unsuccessfully to sell the property to relieve him of the mortgage obligation. By the surrender of the property to the mortgagee petitioner sustained a loss of $4,084.48, which he claimed was an operating loss incurred in carrying on a real estate business. Such loss is one of the two items in the computation of the claimed net operating loss of 1940 sought to be carried over and deducted in 1941. It appears to me from a mere statement of the facts that petitioner did not hold this property for sale in the regular course of carrying on a real estate business and did not so dispose of it. I think, therefore, that the loss sustained in respect of such property was a capital loss and not includible in the computation of a net operating loss.

The Grand Boulevard property was a four-family apartment building and was acquired by land contract in December 1926 in anticipation that much activity would occur in the neighborhood. Petitioner was disappointed in this anticipation. He forfeited his interest in the property to the vendor in January 1940 and sustained a loss of $30,619.55, which he claims was an operating loss sustained in carrying on a real estate business. Such a loss is the other of the two items in question here in the computation of the claimed net operating loss of 1940 sought to be carried over and deducted in 1941.

It appears to me evident that petitioner purchased the Grand Boulevard property because he deemed it a good investment. The fact that it turned out otherwise does not alter the motive for the purchase. He held this property for 3 years prior to the financial debacle in 1929. He also held it for a number of years after the depression period of the 1930's. It is true that petitioner contends that he had no "satisfactory" offers of purchase for the property. What constitutes a satisfactory offer of purchase might vary within the range from a salvage price to a price yielding a thousand per cent profit. Therefore, the fact that petitioner did not receive a satisfactory offer of purchase contributes little, if anything, toward the solution of the question we have before us. However, it would seem that under the circumstances here the withholding of a piece of property from sale for 14 years eliminates that property from the category of property held for sale to customers in regular course in carrying on a real estate business.

Petitioner's basic contention in support of his claim that the losses sought to be deducted herein is that throughout the years from 1916 to 1941, inclusive, he was engaged in regularly carrying on the business of buying and selling real estate. In his efforts to show he was so engaged, petitioner presented evidence of his real estate activities and

also of the real estate operations of the Crystal Lake Realty Co., of which he was the managing executive and the controlling stock of which was owned by petitioner and his family. He also presented evidence of his activities as a real estate broker in selling property for others on commission.

It should be pointed out that the Lake Realty Co.'s real estate business was not a business carried on by petitioner. He was merely the managing official of that corporation in carrying on its business. Likewise, petitioner's activities in selling real property for others on commission or as a broker does not constitute a business on his part of buying and selling real estate.

We are concerned here with the question of whether the losses here sought to be deducted were sustained in respect of property which petitioner, himself, held and disposed of in carrying on the business of buying and selling real estate. We are not concerned with the business he may have conducted as a real estate broker or as a representative of the Realty Co. We can, therefore, eliminate from consideration all of petitioner's activities in either of the latter two capacities.

Pertinent to the question of whether petitioner in his own right was engaged in the real estate business, the record discloses that petitioner was in the business of renting real properties from 1920 to 1941, inclusive. The record also discloses that he was in the business of buying and selling real property from 1920 to 1931, inclusive. It is further disclosed in the record that from 1932 to 1939, inclusive, petitioner neither bought nor sold any real property, but that his livelihood came exclusively from activities in other lines of endeavor.

I shall not go into a detailed analysis of the evidence, since to do so would unduly prolong the space occupied for this opinion. I shall, however, point to the ultimate facts which I think the evidence warrants. But first I venture the statement that mere intent, without more, to carry on a business does not constitute the carrying on of a business. The above mentioned ultimate facts are (1) that 9 years prior to 1940 petitioner abandoned the real estate business and during that 9-year period he was at no time engaged in the carrying on of a real estate business, (2) that neither in 1940 nor 1941 did petitioner resume or engage in the real estate business and, (3) that in any event, neither the 80-acre tract of farm land, the Pallister & Churchill Streets property, nor the Grand Boulevard property was held for sale or exchange in the regular course of carrying on a real estate business.

In my conception, the carrying on of a business requires business transactions with reasonable regularity. Where no business transactions have occurred for 9 years in respect of a business formerly carried on, I would say that the business is dead and not merely sleeping. As

I see it, petitioner's sole reliance in support of his contention that he was engaged in the real estate business throughout the years subsequent to 1916 is that, notwithstanding a period of 9 years of inactivity in buying and selling real estate, he intended to resume such activities when conditions in the real estate business should improve. It is my opinion that an intent to resume a business formerly carried on if, as, and when the conditions in that business should improve, would become too anemic after the lapse of 9 years to stimulate a pulsation of life in the stilled heart of such business.

Therefore, it is my opinion that the losses herein sought to be deducted were capital, and not ordinary, losses and should be allowed as deductions only to the extent allowed by respondent.