JOHN O. FOWLER AND LENA S. FOWLER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 91162. Promulgated December 27, 1939.

*Albert W. Taber, Esq.,* and *Robert N. Chambliss, Esq.,* for the petitioners.

*Stanley B. Anderson, Esq.,* for the respondent.

### OPINION.

Murdock: The determination and contention of the respondent that the loss in this case is a capital loss and the deduction therefor limited to $2,000, is rejected on authority of *Commissioner* v. *Freihofer*, 102 Fed. (2d) 787; *Lloyd Jones*, 39 B. T. A. 531; *Sherwin A. Hill, Administrator*, 40 B. T. A. 376. Thus the petitioners have sustained the burden of proof and are entitled to a favorable decision on the only issue submitted for decision up to and including the moment when all of the evidence in the case had been submitted and the petitioners rested.

Counsel for the respondent asked leave of the Board, after all of the evidence was in, "to file an amended answer to conform to the proof", stating "It is now the respondent's position that the petitioner has failed by the evidence to prove any cost basis whatsoever, and * * * the claimed loss should be eliminated entirely." Permission to file the amended answer was granted with the understanding that the petitioners denied any allegations to be made in the amended answer. An amended answer was filed in which it was alleged that the petitioners had deducted a loss of $17,996.06 of which the respondent had allowed $2,000 and "the said sum of $2,000 was erroneously allowed as a deduction in computing net income for the year 1935 for the reason that petitioner has failed to prove the cost basis of the real estate in question." The respondent made claim for the increased deficiency which would result. The Board's rules require that the

answer shall contain a statement of any facts upon which the Commissioner relies for affirmative relief. The Commissioner also has the burden of proof to establish facts to support any claim for affirmative relief. He has not in this case made any allegations to show what the cost of the property to these petitioners was or that it was less than $80,800, as shown in the return. Obviously, the Commissioner can not profit by a motion to amend his answer to conform to the proof, which proof he contends is a failure of proof on the part of his adversary to prove a fact which was not in issue up to that time.

A further answer to this contention of the respondent is that the evidence shows with reasonable certainty under the circumstances that the fair market value of the stock given by these petitioners in exchange for the property was at least $80,800. The petitioners do not claim a loss based upon any greater basis. The opening price for the stock on the New York Curb Exchange in the spring of 1929 was $28.50 a share. Both John O. Fowler and J. G. Sterchi, the person from whom the real estate was purchased, were familiar with the corporation Sterchi Brothers Stores, Inc. They agreed in their negotiations leading up to the exchange that the stock had a value of $20 a share and would pass in the exchange at that value. It is also clear that the value of the real estate at that time was at least $80,800. The fact that an exchange took place under these circumstances is some evidence that the value of the stock and the value of the real estate were about the same. The petitioner had additional shares of the stock which is also some indication that the parties, after bargaining at arm's length, must have thought that 4,400 shares were about equal in value to the value of the real estate. The cost of the building is shown by the deductions claimed and allowed for depreciation. The petitioner, later in the fall of 1930, sold his remaining shares at what he described as a sacrifice at $10 a share. We conclude from all of the evidence that the value of the shares given for the property was not less than $80,800 when exchanged. Thus if that figure is important it is proven.

The petitioners contend that their basis for gain or loss on the real estate was the fair market value of the real estate at the time it was received in exchange for the stock because their gain or loss on the stock would be computed by taking the fair market value of the real estate as the amount realized and, consequently, that same figure would have to be used thereafter in computing gain or loss on the real estate. Here, however, there is no reason to believe that the value of the stock was substantially different from the value of the real estate at that time and we need express no opinion about this argument of the petitioners.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

DISNEY, dissenting: Petitioners' application for order to take depositions recited that deponent John O. Fowler would testify as to the cost basis to petitioners of the property involved, and that other witnesses named would testify as to the fair market value of the real estate. Upon deposition petitioner John O. Fowler, in answer to the question, "What was the consideration paid for the property?" answered "Four thousand shares of Sterchi stock. * * * I believe it was forty-four hundred", and that it was his intent to compute the cost of the property as forty-four hundred times $20, which would give $88,000, that that was the agreed exchange price, that he considered the value of the property acquired to be worth more than $88,000. On his opening statement, counsel for petitioners, although stating that the case involves the question whether loss sustained constitutes an ordinary loss or a capital loss, stated: "I believe the only matter in controversy as to the facts will be the cost basis to petitioners of the property * * *. Petitioners' contention is that their cost basis of the property which was lost in the foreclosure is the fair market value of the real estate at the time it was acquired in 1930 * * *. The fair market value of the property at the time of acquisition will be shown by the deposition of John O. Fowler, [etc.] * * *. This, in brief, is our case." After the evidence was introduced, respondent moved to file amended answer to conform to proof, on the ground that petitioners had proved no cost basis whatever, and for increased deficiency accordingly; and petitioners' counsel in response to a question from the Member stated: "I would say that the Board has jurisdiction to increase the deficiency if we have not proven the cost, we have got no loss." Amended answer was accordingly filed alleging petitioners to have failed to prove cost basis of the real estate and for increase of deficiency.

Under all of these circumstances, I think it plain that the question of cost basis was squarely before the Board and that the burden was upon the petitioners. The major part of the testimony was directed to that issue, and had the issue been merely one of ordinary loss or capital loss, most of the testimony adduced by petitioners would have been unnecessary. Plainly petitioners assumed the burden of proving cost basis of property acquired. Respondent nowhere admitted any allegation of loss in any amount, but pointedly admitted only certain formal matters. I do not agree with the majority opinion that the Commissioner has the burden of proof to establish facts to support any claim for affirmative relief. Under the rules of the Board he has the burden only in so far as petitioner is relieved of it by statute and with respect to *new matter* pleaded in his answer. I do not consider a contention, akin to a demurrer to the evidence under many jurisdictions, as new matter. Contrary to the majority opinion, I think it

obvious that from the filing of the original answer with its specific denial of the allegations of cost of $80,800 and specific denial of error and of the claim of full amount of loss, the issue of cost basis was before the Board. Certainly if treatment by the parties as an issue is of any efficacy, as is commonly so held, then that was the real issue in the hearing. That issue being pleaded and tried, a contention by respondent that the necessary proof had not been made is not introduction of new matter and under our rule he has not the burden. It seems anomalous to require him to prove a fact as to which he merely points to the record—the fact that the petitioners have not proved their case. I therefore consider that the issue here was that of cost basis, inherently the burden of the petitioner, and the subject of much attempt at proof. *The petitioners nowhere contend that the burden was on respondent.* That suggestion is first made in the majority opinion.

The majority opinion is further in error, I think, in stating that "the evidence shows with at least reasonable certainty under the circumstances that the fair market value of the stock given by these petitioners in exchange for the property was at least $80,800." No evidence so shows such value. The testimony of John O. Fowler that $28.50 per share was the opening market price of the stock on the New York Curb as of the date the stock was issued in the spring of 1929 is obviously of no probative effect to show value on March 18, 1930, the date of the exchange, and was for that reason not given weight; and the same witness testified that he *did not know* the market quotation of the stock on March 18, 1930. He had filed with the Bureau of Internal Revenue a protest, stating in part: "The market value of this stock two years after April 1, 1929, was practically nothing." There was no attempt to show value of stock on March 18, 1930. The only other evidence as to value of the stock is that of a sale of the remaining shares of John O. Fowler sometime in the fall of 1930 for $10 per share at a sacrifice. I know of no logical reasonable or legal criterion by which the evidence above can be made the basis for a conclusion that the stock on March 18, 1930, was of a value of approximately $20 per share, or $80,800. We have repeatedly rejected evidence of this nature.

The fact is that, as shown throughout the record, petitioners' contention was that the *real estate received* was of a value of $80,800 and that such was their basis. They do not put it upon the ground of impossibility of proving fair market value of the stock exchanged, but vigorously contend that such is not the proper base. On brief they state: "* * * petitioners' cost basis was the fair market value, at the time of the exchange, of the property *received* in exchange." The question in the case, upon which it was pleaded and tried, is then the choice between a basis of fair market value of property received,

or of fair market value of the stock exchanged. I think it should be decided. I do not agree that the fact of exchange under the circumstances is evidence that the value of the stock and of the real estate received were about the same. The cases so holding are carefully confined to exchanges by corporations of their stock, at incorporation, for property, and are specifically put upon the ground of impossibility of proof of the value of such new stock. I know of no case applying the principle to a simple exchange by individuals of property as here. *Holmby Corporation*, 28 B. T. A. 1092; *Pierce Oil Corporation*, 32 B. T. A. 403 (429).

The statute, section 113 (a) of the Revenue Act of 1934, in unequivocal terms provides that the base of property shall be the cost thereof, with certain exceptions. The instant case obviously falls within none of such exceptions and no such contention was made. We have here a simple exchange between individuals of property. The fact that the petitioners gave corporate stock for real estate, is of course immaterial and the case is the same as if they had exchanged real estate for real estate. The majority opinion upholds petitioners, who contend that the base of the real estate received is its value at the time of acquisition. That such value is not its cost seems entirely patent. Cost is the value of that which is surrendered in exchange, whether it be cash or property. *Tex-Penn Oil Co.* v. *Commissioner*, 83 Fed. (2d) 518 (524), and authorities cited.

To adopt a rule that property received in a taxable exchange has a basis for future purposes of its fair market value is merely to say that the original cost has merely been increased by the amount of recognized gain. But this is the rule provided for transactions involving "tax-free exchanges generally" under section 113 (a) (6). That statute has been reenacted for many years, with no suggestion that the same rule applies to taxable exchanges. If it was the intent to apply the same rule to taxable exchanges and to nontaxable exchanges in general as provided by section 113 (a) (6), it seems to me remarkable that Congress has never so stated, simple as that would have been; and I conclude that under the doctrine of *inclusio unius exclusio alterius*, it was not the intent of Congress in any of the several acts which might have provided the rule adopted by the majority, to say that simple taxable exchanges were to be an exception to the general basis of cost provided in section 113 (a), and to provide a base of cost plus recognized gain or minus recognized loss, or as the majority opinion puts it, the basis of value at the time of acquisition. That such was not the intent seems demonstrated by the fact that in the same section, in subsection 113 (a) (4), a basis of fair market value at time of acquisition is provided in case of gift or transfer in trust before Jaunary 1, 1921, and in section 113 (a) (5) in case of acquisition by bequest, devise,

or inheritance or by decedent's estate from the decedent. It thus appears that when value at date of acquisition was intended as base, Congress specifically said so. They did not say so in case of the simple taxable exchange. Petitioners on brief argue that the "exchange was a *closed transaction* in 1930, for income tax purposes." That idea is relied on in *Law* v. *McLaughlin*, 2 Fed. Supp. 601, as reason for holding base to be market value of property given in exchange. Moreover, it seems to me there is some refutation of the majority idea in the fact that section 113 (b) as to adjusted basis does not provide any such adjustment as the rule of the majority opinion entails. The basis of cost is not by the statute adjusted for the tax consequences of a taxable transaction.

Exhaustion, wear and tear, obsolescence, and depreciation are to be allowed upon the same basis as the basis for determining the gain upon the sale or other disposition of the property, in general and of course after adjustment, which means in the absence of exceptions, cost adjusted as required by the situation. We have held that such base upon property received in exchange is the fair market value of the property given in exchange for that which is received. In *Pelham Hall Co.*, 33 B. T. A. 329, a new corporation issued its shares for bonds of an old corporation. It exchanged such bonds for real estate by purchasing such real estate with the bonds at foreclosure sale. The new corporation contended that its base for depreciation was the value of the property when acquired. We held the base was cost, saying, "that the depreciation base is actual cost to the taxpayer of the depreciable property and not the value of the property when acquired, for it is the taxpayer's investment which is being preserved by depreciation." We pointed out that the bonds which were given in exchange were property in the hands of the taxpayer corporation, and said: "Thus the cost of the depreciable property acquired is the value of the property (bonds) and cash given up for it." We had already pointed out that when the old bondholders transferred their bonds to the taxpayer corporation for stock they "must be regarded as liquidating their old bonds and realizing gain or loss in the exchange measured by the cost to them of their old bonds and the value of the shares received. Correlatively, the cost to the new corporation of the old bonds received and the value of the new shares issued are likewise measured by the value of the old bonds." Thus it appears that as in the case of John O. Fowler, something having a base for computation of profit or loss was exchanged for property. Yet we held that the basis for depreciation is cost, and not value of property when received.

Likewise, in *La Arcada Bondholders Committee*, 35 B. T. A. 80, a bondholders' committee exchanged bonds for property. Obviously, the bonds had a basis in the hands of the bondholders represented by

the committee, such basis of course being cost or the amount of money paid by them for the bonds. For such bonds the committee received property and the question was as to the basis for depreciation thereof. Again we held that the basis was cost, that is, value of the bonds, plus some cash paid for or exchanged for the property acquired. We went to considerable trouble to ascertain the value of the bonds. That trouble would have been unnecessary, on the theory of the majority herein, that the base should be the value of the property acquired in an exchange, for the property in the cited case was acquired in exchange by those who had a base for the old property for purposes of computation of profit and loss—as suggested in *Pelham Hall Co.*, *supra*. The petitioners' contention that the actual value of the property to be taken as depreciation base was denied.

If in the face of the statute any distinction could be made between a basis for depreciation and a basis for computation of profit and loss upon property received in exchange, we are not confined to such cases. In *Peter Doelger Brewing Co.*, 22 B. T. A. 1176, we considered an exchange in 1915 of stock in an old corporation for shares in a new. The situation arose prior to the effective date of the Revenue Act of 1918, and at a time when the exchange of securities upon corporate reorganization under circumstances present in the case resulted in realized profit and loss. It would appear, therefore, that there is no difference in the cited case and the present case of an exchange between individuals. We held that the exchange resulted in realized gain or loss, measured by the difference between the cost of the old securities and the market value of the new securities received in the exchange, and that the cost of the new securities was the market value of the old securities at the time of the exchange and that that was the base to be used when loss was claimed in 1923 upon the stock received becoming worthless.

In *Jules Omar Cole, Executor*, 13 B. T. A. 1310, trustees for petitioner's deceased exchanged real estate for Liberty bonds in 1919, and distributed same to decedent. In 1921 decedent sold some of the bonds. The trust was taxed upon the basis of having received the bonds at par value and the decedent was required to pay and did pay taxes on his part of the distributable income on the basis of par. Petitioner therefore claimed a loss upon the basis of par value for the bonds when acquired in exchange, invoking estoppel. We pointed out that, "The basis laid down by the statute for determining the profit upon the sale of the bonds in 1921 is the 'cost' thereof", that the evidence did not show cost of the bonds, that they were acquired for real estate, that the fair market value of the real estate at time of exchange is not shown, that the Commissioner had used as basis the fair market value of the bonds when received, to wit,

1302

93 cents on the dollar, that "If the consideration paid for the bonds had a greater fair market value than 93 cents on the dollar the record does not disclose it", that the statutory base is cost, that "If the determination of the Commissioner with respect to the cost of the bonds to the decedent is in error, the evidence does not prove it", that "A showing that he used an erroneous basis for determining the profit on the sale of the land in 1919 is not a showing of the 'cost' to the decedent", and that "For lack of proof of error in the determination of the basis used by the respondent such determination must be approved." The syllabus states that "For lack of evidence that the cost of the bonds to the decedent was greater than their market value at the date of receipt, the determination of the Commissioner is sustained." It is apparent that if petitioner had shown *cost* the market value would not have been considered, that we applied a test of value of the property exchanged as cost of that received, and that we denied application of value of the property received as cost *merely because such value had been used in computing profit upon the former transaction;* and it is to be particularly noted that the exchange was a taxable transaction and *was taxed.* The case was reviewed by the Board.

In *Blair* v. *Commissioner*, 91 Fed. (2d) 992, the Circuit Court of Appeals for the Second Circuit considered a case wherein four sisters in 1926 turned in notes of a face value of $134,400 to a corporation, apparently for all of its capital stock. The corporation in 1930 sold the notes for $66 and claimed a deduction of $134,334. It is held that it was not established that the sisters' interests in the corporation were substantially identical in value to the property contributed by them so as to render cost to the sisters available as cost basis for the corporation for income tax purposes, and that therefore the transaction did not come within the provisions of the statute as to nonrecognition of gain or loss. The court said:

The cost of the notes to the petitioner, measured by the market value of the stock given in exchange, *Rice* v. *Com'r*, 47 F. (2d) 99 (C. C. A. 1), was not proved. No basis, therefore, was established for computing the loss and on this record no loss is deductible. *Burnet* v. *Houston*, 283 U. S. 223, 51 S. Ct. 413, 76 L. Ed. 991.

In *Rice* v. *Commissioner*, 47 Fed. (2d) 99, relied upon in *Blair* v. *Commissioner, supra*, a trust in 1920 exchanged 400 of its shares for a hotel and sold the hotel. The question was the profit, depending upon the base. Laying down the rule that "fair market value of property exchanged for that acquired determines cost as basis for determining gain or loss on sale thereof", the court reverses the Board, which had approved the Commissioner's idea that the cost of the hotel should be determined by the par value of the trust shares,

and remands for the Board to find the fair market value of the 400 shares of the capital stock of the trust, which value the court thinks could be determined.

In *Volker* v. *United States*, 40 Fed. (2d) 697 (U. S. Dist. Ct., W. Dist. of Mo.), taxpayer exchanged assets for certificates of interest in a trust, which in 1920 were sold in part. Quoting section 202 (a) of the Revenue Act of 1921 (in effect the same as section 113 (a) of the Revenue Act of 1934, controlling herein), designating cost in general as the basis of property, the court says:

> Now, as I view the case, it must be said that the cost to the plaintiff of the 24,000 shares or certificates which he received in August, 1917, was the *value* of the assets, including the good will of William Volker & Co., which he transferred in exchange for them. * * * *But the plaintiff has failed to prove the value of the assets which he transferred to the trust in exchange for the shares or certificates he received.* He has proved that the value of the good will, one of the assets, was $500,000. Where he has fallen short is in failing to prove the value of other assets than good will at the time of the transfer of all of the assets to the trust. He has proved only the *cost* of those other assets. But cost is not value, and may be far different from value.

The court therefore found against plaintiff for the very reason I think we should find herein against petitioner.

If there is any distinction to be made between cases involving exchanges after March 1, 1913, and exchanges prior to that time, same is not suggested in the general language used in *George W. Baumhoff*, 3 B. T. A. 392, *St. Louis Union Trust Co., Executor*, 14 B. T. A. 323, or *Otto H. Kahn et al., Trustees*, 27 B. T. A. 244, where we held the bases of property received in exchange to be the fair market value of that given in exchange. The inquiry was as to cost (or March 1, 1913, value). The same inquiry applies as to cost since March 1, 1913, and in the instant proceeding.

Since Congress has never in any of the revenue acts over a period of more than 25 years provided that property received in an ordinary nontaxable exchange shall take the base adopted by the majority opinion, but on the contrary has throughout provided that cost shall be the basis, with exceptions not pertinent here, and since as pointed out in *Otto H. Kahn et al., Trustees, supra*, the base of property received in exchange is fair market value at that date of the property given in exchange, I think that we should not indulge in judicial legislation. If there is reason for the rule favored by the majority, I think Congress should state the rule. It can not be implied from anything that Congress has said, but is contradicted thereby. If, however, we are to do what I think is legislating judicially, we can hardly avoid, I think, overruling the Board cases above mentioned, involving exchanges since March 1, 1913, and

prescribing a basis of fair market value of the property given in exchange.

I have hesitated to impose upon the Board consideration of so lengthy an expression, and have done so only because I believe decision of the question presented requires examination of the above thought. I dissent.