FRED W. and MARGARET T. STEFFENS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Steffens v. Commissioner
Docket Nos. 7636-78, 3620-79
United States Tax Court
T.C. Memo 1981-637; 1981 Tax Ct. Memo LEXIS 105; 42 T.C.M. (CCH) 1585; T.C.M. (RIA) 81637; October 29, 1981; Reversed and Remanded June 16, 1983 *105 Petitioner-husband has been a member of the board of directors of a natural gas utility since 1949. He also was a vice-president of this same utility until his retirement in 1971. After retiring he agreed to serve as a consultant to the utility and to serve no competitor as a consultant or advisor during the life of the agreement. He has not served any other business as a director, consultant or advisor at any time, nor has he held himself out as available for such positions. Both petitioners were partners in a partnership which, by its original information returns, showed that petitioners' distributive shares for 1975 were self-employment income amounts and that their distributive shares for 1976 were self-employment losses. However, amended partnership returns filed two days prior to trial in this case showed that petitioners had distributive shares of self-employment losses in both 1975 and 1976. By amended answer, respondent contends that the distributive shares of self-employment income shown on the original information returns for 1975 are correct and subject to self-employment tax. Held, petitioner-husband was not in the trade or business of being a director or a consultant *106 and the fees received as a director and as a consultant were not self-employment income; heldfurther, respondent failed to carry his burden of proof as to the increased deficiency in self-employment taxes asserted for 1975. Fred W. Steffens, pro se. Walter F. Williams, for the respondent. BRUCE MEMORANDUM FINDINGS OF FACT AND OPINION BRUCE, Judge: Respondent determined deficiencies in petitioners' Federal income taxes for the year 1975 of $ 863.14 as set forth in his statutory notice of deficiency dated April 5, 1978, and for the year 1976 of $ 333.64 as set forth in his statutory notice of deficiency dated February 28, 1979. By amendment to his answer, respondent seeks additional deficiencies of $ 169.85 for 1975 and $ 213.77 for 1976. As framed by the parties, [1] *108 the issues presented for our decision are (1) whether fees received by petitioner-husband as a member of a board of directors in 1975 and 1976 are subject to self-employment tax; (2) whether retainer fees received by petitioner-husband as a consultant in 1975 and 1976 are subject to self-employment tax; (3) whether petitioners received partnership distributions in 1975; and (4) whether petitioners' self-employment tax *107 liabilities must be calculated individually. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, and the exhibits attached thereto, are incorporated herein by this reference. Petitioners, Fred W. Steffens (hereafter Fred) and Margaret T. Steffens (hereafter Margaret), legally resided at Ft. Myers Beach, Florida, during the years in question and when the petitions herein were filed. They timely filed joint Federal income tax returns for the taxable years 1975 and 1976 with the *109 Internal Revenue Service Center, Chamblee, Georgia. Both petitioners were partners in Steffens Enterprises (Enterprises) in 1975 and 1976. Enterprises, located in Estates Park, Colorado, allocated partnership income among the partners pro rata. Petitioners concede that such partnership income, if realized, would be subject to self-employment tax. Timely Partnership Returns of Income (Forms 1065) were filed for 1975 and 1976 with the Internal Revenue Service Center, Ogden, Utah. Amended Partnership returns (Forms 1065X) for 1975 and 1976 were filed with the Ogden Service Center on June 23, 1979. Prior to July 1, 1971, Fred was a vice-president and director of Kansas-Nebraska Natural Gas Company, Inc. (K-N). On July 1, 1971, the effective date of Fred's election for early retirement, Fred entered into an agreement with K-N to serve as consultant and advisor on matters of rate negotiations and procedure. The agreement is reproduced below, in pertinent part. AGREEMENT
Agreement entered into as of July 1, 1971, between Fred Steffens, hereinafter referred to as "Steffens" and Kansas-Nebraska Natural Gas Company, Inc., a Kansas corporation, hereinafter referred to as "K-N", and WITNESSETH: *110 WHEREAS, Steffens has elected to take early retirement from employment and full time participation in the affairs and operation of K-N; and WHEREAS, the Board of Directors of K-N deems it important that K-N shall have the benefit of the knowledge and experience of Steffens in connection with the continuing management and operation of the business and to that end the Board of Directors hereby enters into a contract with Steffens as an independent consultant and advisor upon the terms and conditions hereinafter set forth. NOW, THEREFORE, the parties hereto agreed as follows: Section 1. During the period commencing July 1, 1971 and ending June 30, 1976, K-N agrees to retain Steffens as an independent consultant and advisor, and will, during such period, pay to him the sum of $ 1,800 per quarter (calculated at the rate of $ 600 per month). Steffens shall also be reimbursed for such expenses as shall be incurred by him in performing his consultative services rendered hereunder. Section 2. Steffens, during the aforesaid period, will render such services for K-N in an independent advisory and consultative capacity relating to its business and management as K-N from time to time shall *111 reasonably request; provided, however, that Steffens during such period shall not be called on to render any such services during reasonable vacation periods or periods of illness or other incapacity. The quarterly compensation herein provided for contemplates the utilization of the services of Steffens of up to twelve days per calendar quarter. In the event Steffens provides services to K-N for in excess of twelve days in any calendar quarter he shall be compensated for such excess at the rate of $ 150 per day. Section 3. If Steffens, during the consultative period, shall engage in any activity competitive with any business carried on by K-N, or shall default in the performance of any of the agreements on his part to be performed under this contract and such competitive activity or such default, as the case may be, shall continue for a period of ninety days after K-N shall have notified him in writing to terminate such activity or to remedy such default, or if Steffens becomes, in the judgment of K-N's Board of Directors, permanently incapacitated to perform consultative services for K-N, then K-N shall have the right to cancel this contract by written notice to Steffens; and *112 in the event of such cancellation no further amount shall be payable hereunder by K-N to Steffens and K-N shall have no further liability hereunder. In any event, this agreement will terminate upon the death of Steffens. Fred's services as a consultant were valued by K-N because of his general expertise in rate negotiations and specific, intimate knowledge of K-N's rate negotiations procedures. Fred also was involved with K-N in 1975 and 1976 as a member of K-N's board of directors, as he had been since 1949, for which he received fees of $ 2,200 in 1975 and $ 3,600 in 1976. As partners in Enterprises, Fred and Margaret were allocated, by the original 1975 partnership return of Enterprises, distributive shares of self-employment income for 1975 of $ 210 and $ 1,940. Petitioners did not include these amounts as self-employment income on their 1975 joint income tax return. For 1976, net losses for self-employment of $ 274 and $ 2,531 were allocated by the original partnership return of Enterprises to Fred and Margaret, respectively. Margaret had no other self-employment income or losses for 1976. OPINION Respondent contends that the fees received by Fred as a consultant and director *113 of K-N in 1975 and 1976 wer subject to the self-employment tax. Further, respondent contends by amended answer that petitioners' allocations of self-employment income from Enterprises for 1975 should be added to the calculations of petitioners' self-employment tax liability for 1975 and that petitioners' allocations of net loss from self-employment from Enterprises for 1976 must be applied individually against each petitioner's self-employment income for 1976, despite the fact that Fred and Margaret filed a joint return for 1976. To the contrary, petitioners contend that Fred was not in the "trade or business" of being a consultant and that being a director is not a "trade or business." Therefore, say petitioners, the fees received by Fred as a consultant and a director for K-N are not subject to the self-employment income tax. Further, although petitioners do not contest the fact that self-employment income from a partnership is subject to self-employment tax, petitioners disagree with respondent as to the amounts of such income or loss from Enterprises for 1975 and 1976 and as to the application of those amounts in calculating petitioners' self-employment tax liability for those *114 years. Section 1401 [2] imposes a tax on "self-employment income," to fund old-age, survivors, and disability insurance benefits and hospital insurance benefits in the way Social Security taxes imposed by section 3101 do for wage earners. For 1975 and 1976, the combined tax rate on "self-employment income" was 7.9 percent. "Self-employment income" is defined by section 1402(b) as the "net earnings from self-employment" of an individual, if greater than $ 400 for the taxable year, within a maximum contribution and benefit base. As determined under section 230 of the Social Security Act, the contribution bases for 1975 and 1976 were $ 14,100 and $ 15,300, respectively. Calculated separately for each individual (section 6017), this base is reduced by the amount of wages subject to Social Security tax received by the same individual during the same taxable year. Section 1402(b)(1). Section 1402(a) defines "net earnings from self-employment" as * * * the gross income derived by an individual from any trade or business carried on by such *115 individual, less the deductions allowed by this subtitle which are attributable to such trade or business, plus his distributive share (whether or not distributed) of income or loss described in section 702(a)(8) from any trade or business carried on by a partnership of which he is a member; * * * subject to certain limitations. [3] Central to this basic definition, whether applied to an individual or a partnership, is the phrase "trade or business." For purposes of defining self-employment earnings as income from a trade or business, "trade or business" is to be defined as it is under section 162 for determining deductible trade or business expenses. Section 1402(c). However, the only definition of "trade or business" or of what constitutes "carrying on any trade or business" provided by section 162 is that which has evolved under the prevailing case law interpreting that *116 section. An explicit definition of the phrase is not contained in this case law or in the Internal Revenue Code. Barrett v. Commissioner, 58 T.C. 284, 288 (1972). Although various factors have been considered in determining whether a taxpayer's activities are a trade or business, each of these factors is only a guideline and no one factor is conclusive. Barnett v. Commissioner, 69 T.C. 609, 613 (1978); Gentile v. Commissioner, 65 T.C. 1, 4 (1975); Barrett v. Commissioner, supra, at 288. "To determine whether the activities of a taxpayer are 'carrying on a business' requires an examination of the facts in each case." Higgins v. Commissioner, 312 U.S. 212, 217 (1941). Upon the facts in this case, we find that Fred's status as a member of the K-N board of directors is not a trade or business under section 162 and, thus, is not a trade or business for self-employment tax purposes. Therefore, the fees received by Fred for his services as a director of K-N are not subject to self-employment tax, even though they are clearly income for Federal income tax purposes. [4]
Respondent *117 relied upon a single, limited quote from Doggett v. Burnett, 65 F. 2d 191, 194 (C.A.D.C., 1933) which states: "The real test is whether the operation was carried on as business for gain or whether it was carried on for recreation or pleasure." This quote did not originate with the opinion in Doggett, but was merely used by the court in analyzing the taxpayer's profit motive, which is only one of many factors determinative of a "trade or business." The quote originally appeared in our opinion in George v. Commissioner, 22 B.T.A. 189, 195 (1931). In that case, decided prior to passage of section 183 dealing with "hobby loss" deductions, we differentiated between a hobby and a business enterprise. The quoted test was formulated for such differentiation and is inapposite for our purposes in this case. The exclusion of an activity from the definition of a "hobby" does not define it automatically as a "trade or business," for, assuming we were able to determine that Fred's director activity was not a "hobby," we would still have to determine whether the activity was a "trade or business" or an activity for the production of income. Compare sections 162 and 212; cf. Gentile v. Commissioner, supra, at p. 5. *118 Respondent's reliance is misplaced. Although he was compensated for his services as a director for K-N, Fred was not engaged in the "trade or business" of being a director. His activity as a director for K-N was an isolated instance. Fred had been a director of K-N since 1949, but had never been asked to serve on any other board of directors and had never presented himself as an expert generally available for such a position. Deputy v. DuPont, 308 U.S. 488, 499 (1940) (Frankfurter, J., concurring); accord Snow v. Commissioner, 416 U.S. 500, 502-503 (1974); see also McDowell v. Ribicoff, 292 F. 2d 174 (C.A. 3, 1961); White's Will v. Commissioner, 119 F. 2d 619 (C.A. 3, 1940). Even if service on a single board of directors were, under certain circumstances, considered self-employment income (see p. 12, infra), his total work experience was restricted to that of the accounting and rate negotiation functions of a natural gas utility. Fred's position on the K-N board was due to his special knowledge in these narrowly defined areas and, perhaps to some degree, due to the fact that he and Margaret owned a small portion of K-N stock. Fred's duties as a director involved four meetings *119 per year, each requiring six hours or less of Fred's time, for which he was compensated by fees of $ 2,200 and $ 3,600 for 1975 and 1976, respectively. Under such limiting facts, we cannot find that Fred's position as a director of K-N was occupied in a manner which would label it a "trade or business." [5] *120 In short, the compensation received by Fred was taxable income, but it was not self-employment income. We reach this conclusion on the limited circumstances of this case and do not decide whether directors' fees received by persons who served more actively in that capacity for one or more corporations should be characterized as self-employment income. Cf. Rev. Ruls. 68-595, 1968-2 C.B. 378, 72-86, 1972-1 C.B. 273, and 80-87, 1980-1 C.B. 189. Similarly, we find that Fred was not In the "trade or business" of being a rate consultant and, thus, the fees Fred received under the Agreement with K-N are not subject to the self-employment tax of section 1401. Our finding is based on the conclusion that Fred did not hold himself out as generally available to perform consulting services. However, our focus in this issue is upon the interpretation of the non-competition clause in the consultation agreement and Fred's relative intent. This focus is dictated by our opinions in Barnett v. Commissioner, 69 T.C. 609 (1978), in which we found the taxpayer's consulting fees to be self-employment income, and in Barrett v. Commissioner, 58 T.C. 284 (1972), in which we found the taxpayer's consulting fees not to be self-employment income. Each party to this case cites the opinion favorable to its respective *121 position. In Barnett, cited by respondent, the taxpayer was an executive of a bank in Tyler, Texas, prior to retirement. After retirement, the taxpayer agreed to furnish consulting services to the bank and further agreed not to perform similar services for any business competing in substantial degree with the bank. However, the parties in Barnett stipulated that the taxpayer expected to be available as a consultant outside the Tyler, Texas area. Although the taxpayer performed no services for any other business and received no other fees, we found the consulting fees received from the bank to be self-employment income. Having been restricted only narrowly by the consulting agreement, the taxpayer remained generally available as a concultant outside the Tyler, Texas area and fullyexpected to be available. In Barrett, cited by petitioner, the taxpayer, an executive vice-president for a manufacturing company, agreed to continue in full service for a certain number of years, at the end of which he would retire. After retirement, as further provided in the agreement, the taxpayer would render advisory and consulting services upon request of the company and would not compete directly *122 or indirectly with the company as a consultant or advisor to any other business in any matter or manner against the best interests of the manufacturing company. During the time in question, the taxpayer rendered no consulting services, [6] received no requests for such services, and engaged in no competition with the manufacturing company. Since the taxpayer was not generally available as a consultant, due to the agreement restrictions, and since he was not otherwise holding himself out as available, we found that the fees he received under the agreement were not self-employment income. The instant set of facts more closely resembles those in Barrett and we follow our holding in that opinion. Fred was prevented from performing consulting services for any business in *123 competition with any business carried on by K-N by the provisions of the agreement.He did not perform any consulting services for any other business, did not intend to perform any such services, and was not requested to do so by any other business. [7] *124 The restrictions in the agreement with K-N were broader than those in the agreement analyzed in Barnett and Fred did not expect to perform outside those restrictions, as it was stipulated that the taxpayer in Barnett did. Fred was not in the "trade or business" of being a consultant. Therefore, the consulting fees received were not self-employment income. Our final issues involve the partnership distributive shares of Fred and Margaret in 1975 and 1976. While the petitioners do not contest the fact that their partnership distributive shares would be subject to the self-employment tax, they do contest respondent's determinations as to whether gains or losses were allocated to them by the partnership, the amount of those gains or losses, and the application of the self-employment tax to those amounts. Based upon the original partnership returns filed by Enterprises, respondent alleges in his amended answer that Fred and Margaret received income allocations of $ 210 and $ 1,940, respectively, in 1975, and received loss allocations of $ 274 was $ 2,531, respectively, in 1976. Upon these figures, respondent calculated the self-employment tax liabilities of Fred and Margaret separately. The petitioners contend that they each were allocated losses for both 1975 and 1976, as shown on amended partnership returns, and that Margaret's losses should be used to offset Fred's self-employment income, if any. Due to our findings *125 in the first two matters in this case, we do not need to determine the amounts of the losses allocated to the petitioners in 1976 or the treatment of those losses for self-employment tax purposes; nor do we need to decide whether Fred realized a gain or a loss in 1975. The self-employment income of each individual for each taxable year is calculated separately. Section 6017. Self-employment losses may not be carried forward or back to another year. Section 1402(a)(4); see also section 1402(a); 702(a)(8); 703(a)(2)(D). Since neither Fred nor Margaret had any other self-employment income for 1976, the amounts of the losses reported by Enterprises' partners are meaningless for self-employment tax purposes. Moreover, minimum self-employment income of $ 400 is necessary to trigger the self-employment tax. Section 1402(b)(2). Since Fred had no other self-employment income for 1975, even a decision most favorable to respondent would find that Fred received only $ 210 self-employment income for 1975, which is below the minimum of $ 400. Section 1402(b)(2). Therefore, the only matter remaining for our determination is whether Margaret received a gain allocation of $ 1,940, as respondent *126 alleges, or a loss allocation, as petitioners contend, for 1975. Any loss would be as meaningless as those received in 1976; the gain would expose petitioners to a self-employment tax liability of $ 153.26 for 1975.
The issues relative to the partnership distributions were raised by respondent in his amended answers, filed in both dockets to conform the pleadings to the evidence presented.In the amended answer in docket No. 7636-78, respondent alleged facts not contained in the earlier pleadings and sought an increased deficiency in self-employment taxes for 1975.Respondent, therefore, has the burden of proving that Margaret's distributive share of partnership income from Enterprises for 1975 was income in the amount of $ 1,940. Rule 142(a), Tax Court Rules of Practice and Procedure; Sanderling, Inc. v. Commissioner, 66 T.C. 743, 758 (1976), [8] affirmed 572 F. 2d 174, 178 (C.A. 3, 1978); Tauber v. Commissioner, 24 T.C. 179, 185 (1955); Fowler v. Commissioner, 40 B.T.A. 1293, 1295-1296 (1939), reversed on other issues in an unpublished opinion (C.A. 6, June 25, 1941).
Respondent's entire argument for the increased deficiency is based on the *127 original U.S. Partnership Return of Income (Form 1965) for Enterprises for 1975 which was timely filed with the Internal Revenue Service Center at Ogden, Utah. The fact that an amended return (Form 1065X) for Enterprises has been filed with the Center at Ogden has been stipulated. Petitioners contend that the amended return, showing Margaret's distributive share for 1975 as a $ 2,632 loss, was filed prior to trial in this case. Respondent agrees that the amended return was filed in Ogden, Utah, prior to trial in this case, but claims that the filing date was only twodays before trial was held in Atlanta and that there has not been sufficient time to examine the amended return. There is no statutory provision which creates the right to file an amended return after the time for filing the original return has expired. Koch v. Alexander, 561 F. 2d 1115 (C.A. 4, 1977); Miskovsky v. United States, 414 F. 2d 954 (C.A. 3, 1969); Klinghamer v. Brodrick, 242 F. 2d 563 (C.A. 10, 1957); Keeler v. Commissioner, 180 F. 2d 707 (C.A. 10, 1950). However, it has been the general administrative practice of respondent to accept amended returns filed after the due date in order to correct clear errors *128 or plain mistakes in original returns. Koch v. Commissioner, supra; Klinghamer v. Brodrick, supra.Petitioners contend that the amended return in question was filed to correct mistakes in the original. Nevertheless, short of an abuse of discretion, the respondent may reject any amended return he finds unacceptable. [9] *129 In this case, the respondent has not explicitly rejected the amended return in question as unacceptable. Thus, the question of whether respondent abused his discretion in refusing to accept the amended return is not before us. Therefore, although the timing of the amended return is regrettable and the effectiveness of the return questionable, we do not need to address the propriety of the amended return in reaching our decision under the instant set of facts. Since respondent has the burden of proof on this issue and since his determination clearly depends upon the contents of the original return, the efficacy of the original return is the basis of our decision.
It is well settled that a taxpayer may not rely on a tax return as conclusive evidence of the facts and figures asserted therein. Mears v. Commissioner,386 F. 2d 450 (C.A. 5, 1967) affirming a Memorandum Opinion of this Court; [10]Halle v. Commissioner, 7 T.C. 245 (1946), affirmed 175 F. 2d 500 (C.A. 2, 1949), certiorari denied 338 U.S. 949 (1950); Roffwarg v. Commissioner, 2 B.T.A. 332 (1925); Munising *130 Motor Co. v. Commissioner, 1 B.T.A. 286 (1925). Even a sworn statement, under penalty of perjury, that his return is correct will not satisfy the taxpayer's burden of proof where other information shows the contrary. Roberts v. Commissioner, 62 T.C. 834 (1974); Halle v. Commissioner, supra.Allowing a taxpayer to meet his burden of proof merely by submitting his self-certified tax return would contradict the basic concept that respondent's deficiency determinations are presumptively correct. Halle v. Commissioner, supra.
In the instant case the tables are turned. Here, respondent, without the benefit of the presumption of correctness, is attempting to introduce a tax return in total satisfaction of his burden of proof of an asserted increased deficiency. Respondent seeks to endow the return with a greater credibility when used for his purposes than when used for the taxpayer's.Respondent asserted no other facts and submitted no other evidence on the 1975 income of Enterprises or on the 1975 distributive shares of the individual partners. Instead, respondent asks us to accept a copy of the 1975 information return of Enterprises, standing alone, as satisfying *131 his burden of proof that the figures contained therein are correct.
Upon our own examination, we do not accept the original partnership return for 1975, without more, as satisfying respondent's burden of proving his assertion of an increased deficiency in Margaret's self-employment tax for 1975. [11] By failing to present even a shred of supplementary information to support the facts and figures contained in the original return, respondent has failed to convince us that Margaret's proper distributive share of partnership income for 1975 was a gain of $ 1,940. [12] *132 We do not decide here that respondent may never use a taxpayer's return as evidence against that taxpayer in any case. However, when respondent has the burden of proving the proper distributive share of an individual partner, presenting a partnership information return alone, without further explanation or foundation, does not satisfy that burden. [13] *133 Respondent's request for the increased deficiency is denied. To reflect the foregoing, Decisions will be entered under Rule 155. Footnotes
1. For 1975, a downward adjustment of a deduction for taxes and disallowance of a miscellaneous deduction in the amount of $ 157.58 and of a personal exemption credit erroneously claimed are not contested by petitioners. After allowing for these adjustments and the payment of $ 30.00 by petitioners, the amount placed in dispute by the petition in this case was only $ 742.60 of the original $ 863.14 deficiency. Respondent, by amended answer, increased the total amount in dispute for 1975 to $ 912.43, solely in relation to alleged additional self-employment income in the form of partnership distributions. For 1976, the original $ 333.64 deficiency consisted of self-employment taxes of $ 333.38 and an addition of $ 0.26 rounded off by the petitioners on their return. Petitioners did not contest that oil royalties of $ 17 received in 1976 were self-employment income. However, they do contest the entire deficiency, since acceptance of their position with respect to petitioner-husband's director and consultant fees would result in less than $ 400 of self-employment income, and thus no self-employment tax, for 1976. Section 1402(b)(2). Respondent, by amended answer, increased the total amount in dispute for 1976 to $ 547.15 by explicitly disallowing the offset of petitioner-husband's 1976 self-employment income by petitioner-wife's 1976 self-employment loss. See sections 1402(a)(5)(B); 6017. Implicit in the increase was the elimination from the self-employment tax calculation for 1976 of the $ 17 of oil royalties, a $ 192 loss from the petitioners' Subchapter S corporation and the $ 0.26 rounding adjustment. Neither side addressed these implicit adjustments. The effect on the above calculations of amended partnership returns for 1975 and 1976 from petitioners' partnership will be discussed below in conjunction with the third issue in this case.↩
2. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in question.↩
3. The remainder of section 1402(a) consists of lengthy exceptions and restrictions, most of which apply in determining that part of partnership income to be treated as self-employment income. Those provisions are discussed in more detail below as applicable in consideration of the third issue in the instant case.↩
4. A trade or business involves something more than the production of income for Federal income tax purposes. Gentile v. Commissioner, 65 T.C. 1, 4-5↩ (1975).
5. In Noland v. Commissioner, 269 F. 2d 108, 111 (C.A. 4, 1959), certiorari denied 361 U.S. 885 (1959), the Fourth Circuit began their analysis of a business expense deduction case with the general assumption "that every person who works for compensation is engaged in the business of earning his pay." Although respondent relies on this statement as placing Fred, as a compensated director, in the "trade or business" of being a director, we find it inapposite to the instant set of facts. Fred's position as a director of K-N was an isolated task which did not involve the regular activity implicit in the above assumption and which was not entered into under a profit motive. See DePinto v. United States, 407 F. Supp. 1 (D. Ariz. 1975), affirmed 585 F. 2d 405↩ (C.A. 9, 1978).
6. Although no services were performed, the fees in Barrett were not received solely for noncompetition. We clearly stated that the nature of the compensatiuon "depends upon the terms of the contract as originally entered into and is not altered by the subsequent inaction of the petitioner.* * * the fact that he has rendered no advisory or consulting services * * * is immaterial." Barrett v. Commissioner, supra↩, at 289.
7. Respondent repeatedly proposed an incomplete test, the application of which would have us find Fred in the "trade or business" of being a consultant simply because he was physically available to consult natural gas utilities which were not in competition with K-N. However, even beyond the bounds of a noncompetition agreement, physical availability for a task does not equate with presenting one's self to others as engaged in that task for hire. Cf. Deputy v. DuPont, 308 U.S. 488, 499 (1940) (Frankfurter, J., concurring). The mere availability for a task, without presenting one's services in that task as being for sale, is only a minor part of the requisite condition for being in a "trade or business."
8. 67 T.C. 176↩ (1976) (supplemental opinion).
9. Where a partnership may elect certain tax treatment (often only with the Commissioner's consent), the "abuse of discretion" test exists. See, e.g., Koch v. Alexander, 561 F. 2d 1115 (C.A. 4, 1977); Miskovsky v. United States, 414 F. 2d 954(C.A. 3, 1969); Klinghamer v. Brodrick, 242 F. 2d 563 (C.A. 10, 1957); Drazen v. Commissioner, 34 T.C. 1070 (1960). In situations involving elections, other cases have permitted an election to be validly exercised only in an original return or in a timely amendment, with "timely amendment" meaning if filed within the period provided by the statute for filing the original return. J.E. Riley Investment Company v. Commissioner, 311 U.S. 55 (1940); W.B. Scaife & Sons Co. v. Commissioner, 314 U.S. 459 (1941). Estate of Dupree v. United States, 391 F. 2d 753, at 758-759 (C.A. 5, 1968). On the other hand, the correction, by amended return, of clear errors has been allowed over the objections of the Commissioner by an implicitly lesser test. Taylor v. Commissioner, 2 B.T.A. 1159↩ (1925).
10. T.C. Memo 1966-173↩.
11. Compare Lowell Cotton Mills v. Commissioner, 1 B.T.A. 303, 304↩ (1925). 12. Our general doubts of the accuracy and credibility of the original 1975 return are enhanced by the fact that Enterprises, although perhaps tardy, filed an amended return for 1975. Certain interest income is treated differently on the amended return. Given the information presented, proper treatment of that interest income is not determinable. See, section 1402(a)(2); section 1.1402(a)-5(b), Income Tax Regs.↩
13. Returns are considered admissions against interest and may be used against the party filing the return as evidence of the facts therein. Old Mission Portland Cement Co. v. Commissioner, 69 F. 2d 676, 680 (C.A. 9, 1934), affirming in part, reversing in part 25 B.T.A. 305 (1932), affirmed 293 U.S. 289 (1935); Roche v. Commissioner, 63 F. 2d 623, 624 (C.A. 5, 1933), affirming 21 B.T.A. 1139 (1931); Bedell v. Commissioner, 30 F. 2d 622, 625 (C.A. 2, 1929), affirming 9 B.T.A. 270 (1927); Times Tribune Co. v. Commissioner, 20 T.C. 449, 452 (1953). This is true regardless of which party introduces them into evidence. roche v. Commissioner, supra; Times Tribune Co. v. Commissioner, supra. Further, the report of a transaction in the return of a partnership is significant to the determination of the true facts surrounding that transaction relative to an individual partner. Curtis v. Conmissioner, 12 T.C. 810, 814 (1949), affirmed 183 F. 2d 7 (1950).Nevertheless, the use of returns as evidence of the facts asserted therein is subject to explanation and contradition. Roche v. Commissioner, supra; Curtis v. Commissioner, supra↩.The returns alone are not conclusive.