**Fred W. STEFFENS and Margaret T. Steffens, Petitioners-Appellees,**

v.

**COMMISSIONER OF INTERNAL REVENUE SERVICE, Respondent-Appellant.**

**No. 82–5437.**

United States Court of Appeals, Eleventh Circuit.

June 16, 1983.

Kenneth W. Gideon, Chief Counsel, I.R.S., Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Farley P. Katz, U.S. Dept. of Justice, Washington, D.C., for respondent-appellant.

Fred W. & Margaret T. Steffens, pro se.

Before RONEY and HILL, Circuit Judges, and MORGAN, Senior Circuit Judge.

LEWIS R. MORGAN, Senior Circuit Judge:

The appellees, Fred W. and Margaret T. Steffens, brought this action in the Tax Court seeking a redetermination of certain deficiencies assessed against them by the Commissioner of the Internal Revenue Service. The Commissioner determined that the taxpayers were liable for the self-employment tax imposed by Section 1401 of the Internal Revenue Code of 1954, 26 U.S.C. § 1401, on remuneration received by Fred Steffens for work performed during 1975 and 1976 as a consultant and director of his former employer. The Tax Court held adversely to the Commissioner and the Commissioner appeals to this court. For the reasons set forth below, we reverse and remand for further proceedings not inconsistent with this opinion.

Fred Steffens was employed by Kansas-Nebraska Natural Gas Company from 1938 until his retirement in 1971. Upon his retirement from his position as an officer of Kansas-Nebraska in charge of accounting, rate and tax matters, Steffens simultaneously entered into a consulting agreement with the company. Pursuant to this agreement, Steffens was to render advisory services on matters of rate negotiations whenever reasonably requested for a period of five years. The agreement, in which Steffens was denominated "an independent consultant and advisor," contemplated the use of Steffens' services for up to twelve days per quarter. Kansas-Nebraska reserved the right to cancel the agreement if Steffens engaged in any activity competitive with any business of the company. In exchange for the exclusive use of Steffens' services, the company agreed to pay Steffens $1800 per calendar quarter until the agreement expired plus an additional $150 per day for all days service in excess of twelve. During the first year and one-half after his retirement the taxpayer did some consulting work for Kansas-Nebraska. During 1975 and 1976, however, Steffens neither provided any services for the company nor did he hold himself out to others as available to do consulting work. Steffens, therefore, received the minimum payments under the contract of $7200 and $3600 for the years 1975 and 1976, respectively.

Steffens also served as a director of Kansas-Nebraska from 1949 until his retirement in 1971. After his retirement, taxpayer continued to serve as a director including the years 1975 and 1976 at issue here. As a director, Steffens attended four meetings a year, each requiring six hours or less of his time. Steffens was paid $2200 in 1975 and $3600 in 1976 for serving as a director. Steffens was never asked to serve on any other board of directors and never presented himself as available for such a position.

The Commissioner determined that Steffens was liable for the self-employment tax on the fees he received as a consultant and director of Kansas-Nebraska. The Commissioner found that Steffens was in the trade or business of being a consultant and director and therefore the payment he received for these activities constituted self-employment income subject to the tax imposed by Section 1401. The Tax Court rejected this position reasoning that Steffens was not in the trade or business of being a director because his activity as a director was "an isolated instance" and his "total work experience" as a director was "restricted to that of the accounting and rate negotiation functions of a natural gas utility." Similarly, the Tax Court reasoned that Steffens was not engaged in the trade or business of being a rate consultant because the non-competition clause in the consultation agreement prevented Steffens from providing consulting services to other companies in competition with Kansas-Nebraska. We have jurisdiction of this appeal pursuant to 26 U.S.C. § 7482 (1954).

The self-employment tax was enacted to extend the federal Old Age, Survivors and

Disability Insurance and Hospital Insurance benefits to self-employed individuals. S.R. No. 1669, 81st Cong., 2d. Sess., 1950–2 Cum. Bull. 302, 307–08. For self-employed individuals, it is the counterpart of the taxes imposed on wages of employees by the Federal Insurance Contributions Act (FICA), *Newberry v. Commissioner,* 76 T.C. 441, 443 (1981). In the employee context, FICA taxes are imposed only on the basis of wages received by employees, wages being generally defined to include all remuneration for employment. 26 U.S.C. §§ 312(a), 3306(b). Therefore, no tax liability attaches to non-wage income. *Id.,* §§ 3101(a), 3301. The self-employment tax follows a similar statutory scheme. Section 1401 of the 1954 Internal Revenue Code imposes a tax on each individual's "self-employment income." "Self-employment income" consists of "net earnings from self-employment" derived by an individual during the taxable year. *Id.,* § 1402(b). Net earnings from self-employment in turn are defined in section 1402(a) as the gross income, less certain deductions, derived by an individual from any trade or business carried on by such individual. For purposes of this section, "trade of business" is defined by reference to the term as it is used in section 162 of the Code. *Id.,* § 1402(c) ("the term 'trade or business,' when used with reference to self-employment income or net earnings from self-employment, shall have the same meaning as when used in section 162 (relating to trade or business expenses) . . ."). Unfortunately, the only definition that obtains by reference to section 162 is that which has evolved under prevailing case law interpreting that section. 4A Mertens, Law of Federal Taxation § 25.08 (1979). We therefore turn to the Tax Court's interpretation of the prevailing case law.

■ The Commissioner argues the Tax Court erred in holding that carrying on a trade or business involves holding one's self out to "others" as engaged in the selling of goods or services as opposed to the singular "another." We agree. The Tax Court's position that a trade or business requires the offering of goods and services to multiple "others" derives from a line of cases having their genesis in Justice Frankfurter's concurring opinion in *Deputy v. duPont,* 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416 (1940). Justice Frankfurter, in the context of distinguishing between ordinary business expenses and those incurred in personal investment activities, said:

> "[C]arrying on any trade or business" within the contemplation of § 23(a) [now section 162], involves holding one's self out to others as engaged in the selling of goods or services.

*Id.,* at 499, 60 S.Ct. at 369, 84 L.Ed. at 424. The Tax Court has enlarged upon this remark and imposed the requirement that for "trade or business" purposes a taxpayer must "hold himself out" to others. See *Gentile v. Commissioner,* 65 T.C. 1 (1975) (professional gambler not engaged in trade or business because he did not offer his services to others). *But see Ditunno v. Commissioner,* 80 T.C. 362 (1983) (rejecting *Gentile* rule for a "facts and circumstance" test). In the context of consultation agreements, the Tax Court has focused its inquiry not only upon the relative passivity of the taxpayer's income producing activity but also upon the numerosity of potential customers or clients that the activity generates. For example, in *Barrett v. Commissioner,* 58 T.C. 284 (1972), and *Barnett v. Commissioner,* 69 T.C. 609 (1978), relied upon below, the Tax Court looked to the exclusivity of the non-competition clauses contained in the consultation agreements. In *Barnett,* a retired manufacturing company executive who agreed to provide consulting services to his former employer was held not to have received self-employment income because the non-competition clause in the agreement prohibited the taxpayer from providing consulting services to any other businesses. In *Barnett,* a retired bank executive who also agreed to provide consulting services to his former employer was held to have received self-employment income because he was prohibited from providing similar services only to banks located in the same town as his former employer. Extrapolating from these cases and Justice Frankfurter's statement in *Deputy v. du-*

*Pont,* the Tax Court below held Steffens was not engaged in the trade or business of being a rate consultant because the non-competition clause in his agreement prevented him from performing any services for businesses in competition with his former employer.[1]

Recently the Second Circuit in *Grosswald v. Schweiker,* 653 F.2d 58 (2nd Cir.1981), rejected the Tax Court's analysis developed in *Barrett* and *Barnett* and held a taxpayer only has to hold himself out to one other to qualify as a trade or business under section 162. In that case a retired bank employee entered into an exclusive consulting agreement with his former employer. The court held that the fees the employee received under the agreement constituted self-employment income notwithstanding the fact that the employee could not and did not hold himself out to "others" as available to render similar consulting services.[2] We agree with the Second Circuit that it "makes little sense to distinguish between a person who 'holds himself out' to only one employer (and agrees to work for no one else) and a person who 'holds himself out' to more than one employer." *Id.,* at 61. In this respect, various courts, including the Tax Court, have implicitly held that a taxpayer may be engaged in the trade or business of being an employee irrespective of the number of employers the taxpayer serves. *Ostrom v. Commissioner,* 77 T.C. 608 (1981); *Noland v. Commissioner,* 269 F.2d 108, 111 (4th Cir.1959), *cert. denied,* 361 U.S. 885, 80 S.Ct. 156, 4 L.Ed.2d 121 (1959); *Hochschild v. Commissioner,* 161 F.2d 817 (2nd Cir.1947). *See also* Rev.Rul. 72–86, 1972–1 Cum.Bull. 273. The term "trade or business" appears in the Tax Code in over sixty places and by necessity must obtain of a functional definition according to the context in which the question arises. *Snow v. Commissioner,* 416 U.S. 500, 94

S.Ct. 1876, 40 L.Ed.2d 336 (1974). In keeping with this approach, the appellate courts have looked to the continuity and frequency of the activity as well as the motivation for the activity. *See, e.g., Snyder v. United States,* 674 F.2d 1359 (10th Cir.1982); *Reese v. Commissioner,* 615 F.2d 226 (5th Cir. 1980). *See also Ditunno v. Commissioner, supra.* Therefore, the proper focus of a trade or business inquiry is not upon the number of clients or customers an activity generates but upon the nature of that activity that produced those clients or customers. If "common understandings and experience" are "the touchstones of the revenue laws," *Helvering v. Horst,* 311 U.S. 112, 117–118, 61 S.Ct. 144, 147, 85 L.Ed. 75, 79 (1940), certainly they must be proved with common sense.

Whether the taxpayer was engaged in the trade or business of being a corporate director presents a more difficult question. The Tax Court rejected the Commissioner's deficiency assessment finding the taxpayer was not in the trade or business of being a director because he served upon a single board of directors. As exposited above, to the extent that the Tax Court's holding is based upon the premise that fees received from service upon a single board of directors cannot constitute self-employment income, it is erroneous. However, this does not end our inquiry. The Tax Court also found that Steffens was not engaged in a trade or business of being a director because his position constituted an "isolated task" not involving regular activity and not entered into for profit. Generally, the Tax Court's findings of fact, like those of a district court, are subject to the "clearly erroneous" standard of review. *Commissioner v. Duberstein,* 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); 26 U.S.C. § 7482(a) (1954) (United States

---

1. Under the *Barnett* analysis a taxpayer must also establish he did not in fact "hold himself out" to other businesses. *Barnett, supra* at 613. It is undisputed that Steffens did not make himself available to other utility companies as a consultant.

2. In *Grosswald* the court was concerned with the denial of Social Security retirements benefits due to excess earnings from self-employment income under 42 U.S.C. § 403. The statutes under consideration in *Grosswald,* however, defined "self-employment income" in the same manner as 26 U.S.C. § 1402. *See* 42 U.S.C. § 411(a), (C).

Courts of Appeal shall review decisions of the Tax Court in the same manner and to the same extent as the decisions of the district courts in civil actions tried without a jury). However, the ultimate conclusion to be drawn from those facts is a question of law subject to normal appellate review. *Reese v. Commissioner,* 615 F.2d 226, 230 n. 5 (5th Cir.1980). While we are not prepared to hold that it was clearly erroneous to find that the taxpayer's "total work experience was restricted to that of the accounting and rate negotiation functions of a natural gas utility," Tax Court opinion at 11, we do hold the conclusion that Steffens was not in the trade or business of being a director is incorrect. A director of a corporation is engaged in the business of performing those duties that devolve to him as a director of the corporation. *Noland v. Commissioner, supra; Commissioner v. People's-Pittsburgh Trust Co.,* 60 F.2d 187 (3rd Cir. 1932). These duties include being entrusted with the management of the affairs of the corporation while exercising diligence in managing and preserving the corporation's assets. *See e.g.,* Model Business Corporation Act (American Bar Foundation) § 35 (1971). The Tax Court's focus upon the "isolated tasks" involved here, therefore, is misplaced. Steffens was charged with performing all those duties associated with being a director by virtue of his position. Ordinarily a single transaction will not constitute a trade or business because the taxpayer enters the transaction with no expectation of continuing the activity. *Reese v. Commissioner, supra.* Steffens, however, has served as a director of a major public utility since 1949 and should have expected to perform all those functions required of such a director. Irregular, sporadic, or casual self-employment is not subject to the self-employment tax, not by torturing the "trade or business" definition, but by the use of a minimum income base. 26 U.S.C. § 1402(b)(2) (Self-employment income shall not include net earnings of less than $400).[3] Therefore we conclude Steffens was in the

trade or business of being a corporate officer.

Our conclusion that the Tax Court erred in holding Steffens was not engaged in the trade or business of being a rate consultant and corporate director does not end the inquiry. In expanding the coverage of the social insurance programs to self-employed individuals, Congress intended to cover all gainfully employed individuals except certain defined classes of individuals. S.R. No. 1669, *supra.* Pursuant to the statutory scheme, the analysis should proceed for a determination of whether Steffens falls within one of the excluded classes. See *Simpson v. Commissioner,* 64 T.C. 974 (1975). Although a decision of the Tax Court may be affirmed on a different theory of law from that relied on in the court below, the better course is to remand for a new hearing when such a theory has no factual basis in the record. *Jefferson Memorial Gardens, Inc. v. Commissioner,* 390 F.2d 161 (5th Cir.1968).

The judgment appealed from is REVERSED and REMANDED for proceedings not inconsistent with this opinion.

---

**3.** The Tax Court also ·concluded that Steffens did not serve as a director out of profit motivation. Because of our disposition we do not disturb this finding but we do note that when a

taxpayer expects to be paid for his services, it would seem plausible to assume he has some profit motive.