JAMES M. HORNADAY AND VIRGINIA A. HORNADAY, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 26419–81.     Filed November 7, 1983.

*Howard L. Williams* and *G. Garner Prillaman, Jr.*, for the petitioners.

*Frank D. Armstrong*, for the respondent.

---

KÖRNER, *Judge*: Respondent determined deficiencies in petitioners' Federal self-employment taxes as follows:

| Year | Deficiency |
|------|-----------|
| 1977 | $1,304 |
| 1978 | 1,434 |
| 1979 | 1,855 |

The sole issue for decision is whether money received by petitioner James M. Hornaday under a contract between him and Guilford Mills, Inc., is self-employment income subject to tax under section 1401.[1]

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of fact, together with the exhibits attached thereto, are incorporated herein by this reference.

James M. (hereinafter petitioner) and Virginia A. Hornaday, husband and wife (hereinafter collectively referred to as petitioners), resided at Greensboro, N.C., at the time the petition was filed in this case. Petitioners filed joint Federal income tax returns for the years 1977, 1978, and 1979 with the Internal Revenue Service Center at Memphis, Tenn.

Guilford Mills, Inc. (hereinafter Guilford Mills), is a U.S. corporation which was founded by petitioner in 1946, and since that time has been engaged in the manufacture and sale of textiles. Petitioner, who was 85 years old at the time of trial herein, was the chief executive officer of Guilford Mills until 1968 when he became chairman of the board of that company. Petitioner continued to preside as chairman of the board of Guilford Mills until March 1971, when he terminated his active employment with that company through retirement.

On March 15, 1971, petitioner entered into a written contract (hereinafter the consulting contract) with Guilford Mills, pursuant to the terms of which he agreed to provide consulting services to Guilford Mills for the rest of his life as Guilford Mills deemed necessary. Petitioner's prior employment contract was terminated. As compensation, the consult-

---

[1]Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue. All references to Rules are to the Tax Court Rules of Practice and Procedure.

ing contract provided that Guilford Mills was to pay petitioner $40,000 per year and provide petitioner with the use of a new automobile every 2 years and an office at Guilford Mills' headquarters. The consulting contract also provided that should petitioner be unable to perform consulting services by reason of physical or mental disability, he would nonetheless continue to receive payments under the contract. Moreover, the consulting contract further provided that if petitioner should die within 5 years after March 1971, $20,000 per year would be payable to petitioner's wife, Virginia A. Hornaday, for the remainder of the 5-year period. The consulting contract did not preclude petitioner from rendering consulting services to competitors of Guilford Mills or any other person or entity.

Paragraph 10 of the consulting contract provides:

10. (a) Consultant [petitioner] will not divulge, furnish or make accessible to anyone (otherwise than in the regular course of business of Corporation [Guilford Mills]) any knowledge or information with respect to confidential or secret methods, processes, plans or materials of the Corporation, or with respect to any other confidential or secret aspects of the business of the Corporation.

(b) Consultant agrees to communicate and make known to the Corporation all knowledge possessed by him relating to any methods, developments, inventions and/or improvements, whether patented, patentable or unpatentable which concerns in any way the business of the Corporation or the industry generally, from the time of entering upon employment until the termination thereof, and whether acquired by Consultant before or during the term of employment; provided, however, that nothing herein shall be construed as requiring any such communication where the method, development, invention and/or improvement is lawfully protected from disclosure as the trade secret of a third party or by any other lawful bar to such communication.

Any methods, developments, inventions and/or improvements, whether patentable or unpatentable which Consultant may conceive of or make along the lines of the Corporation's business while in its employ, shall be and remain the property of the Corporation. Consultant agrees promptly to communicate and disclose all such methods, developments, inventions and/or improvements to the Corporation and to execute and deliver to it any instruments deemed necessary by the Corporation to effect disclosure and assignment thereof to it. Consultant further agrees on request to execute patent applications based on such methods, developments, inventions and/or improvements, including any other instruments deemed necessary by the Corporation for the prosecution of such patent applications or the acquisition of Letters Patent in this and any foreign countries.

(c) The provisions of this paragraph shall survive the termination of this Agreement, irrespective of the reason therefor.

(d) Consultant acknowledges that the services to be rendered by him are of a special, unique and extra-ordinary character and that it would be very difficult or impossible to replace such services and by reason thereof consents and agrees that if he violates any of the provisions of this Agreement, the Corporation shall be entitled to an injunction to be issued by any court of competent jurisdiction restraining him from committing or continuing any violation of this Agreement.

During the early years of the consulting contract (i.e., 1971 through 1975), petitioner's advisory services were sought by Guilford Mills regarding his expertise in the areas of real estate and plant expansion. Petitioner provided consulting services to Guilford Mills with respect to such matters through 1975.

Although petitioner stood ready and able to provide consulting services to Guilford Mills during years in issue herein (i.e., 1977, 1978, and 1979), that company found no occasion to call upon petitioner for these purposes during said years. Moreover, although the consulting agreement did not restrict petitioner's consulting activities, he did not offer or provide such services to any individual or entity other than Guilford Mills at any time.

Petitioner was paid $40,000 in each of the years 1977, 1978, and 1979 in accordance with the terms of the consulting agreement. These $40,000 payments were reported by petitioners on their 1977, 1978, and 1979 income tax returns as consultation fees. Guilford Mills did not withhold any part of the $40,000 annual payments for income or Social Security taxes and did not issue a Form W-2 to petitioners for these years. Petitioners paid no self-employment taxes with respect to these amounts.

## OPINION

The issue presented in this case is whether the payments petitioner received under his consulting contract with Guilford Mills are subject to the self-employment tax. The parties agree that such payments are subject to the self-employment tax only if they derived from a "trade or business" carried on by petitioner. An overview of the relevant statutory provisions will serve to place the disputed issue in its proper perspective.

The self-employment tax was enacted by the Social Security Act Amendments of 1950, ch. 809, 64 Stat. 477. It functions to

finance the extension of Social Security benefits to self-employed individuals. S. Rept. 1669, 81st Cong., 2d Sess. (1950), 1950–2 C.B. 302, 306, 352–353. For self-employed individuals, it is the counterpart of the taxes imposed upon the wages of employees by the Federal Insurance Contributions Act (FICA) and the Federal Unemployment Tax Act (FUTA). See secs. 3121(a), 3306(b).

With respect to employees, FICA and FUTA taxes are imposed only on wages. Secs. 3101(a), 3301. Income received by employees which does not constitute "wage" income is not subject to these taxes.[2]

The statutory structure of the self-employment tax follows a similar pattern. This tax is imposed on each individual's "self-employment income." Sec. 1401. "Self-employment income" is defined as "net earnings from self-employment," with certain exceptions not here pertinent. Sec. 1402(b). "Net earnings from self-employment" in turn is defined as gross income, less certain deductions, derived by an individual from any "trade or business carried on" by such individual. Sec. 1402(a). Thus, just as nonwage income is not subject to FICA and FUTA taxes in the employee context, income which is not derived from a "trade or business" of a nonemployee, is not subject to the self-employment tax. However, the above provisions are to be broadly construed to favor coverage for social security purposes (*Rasmussen v. Gardner*, 374 F.2d 589 (10th Cir. 1967); *Delno v. Celebrezze*, 347 F.2d 159 (9th Cir. 1965)), and thus to favor treatment of income as earnings from self-employment. *Estate of Ellsasser v. Commissioner*, 61 T.C. 241 (1973); *Johnson v. Commissioner*, 60 T.C. 829 (1973).

For purposes of the self-employment tax provisions, the term "trade or business" is to be accorded the same meaning as it is when used in section 162. Sec. 1402(c). However, since section 162 provides no statutory definition of the term, the only definition that obtains by reference to section 162 is the definition which has developed under prevailing case law interpreting that statute.

---

[2] For these purposes "wages" are defined as all remuneration for "employment." Secs. 3121(a), 3306(b). Employment is generally defined as any service an employee performs for his employer. Secs. 3121(b), 3306(c).

Petitioners contend that the payments petitioner received pursuant to the consulting contract did not derive from any trade or business carried on by him and therefore maintain that such payments are not subject to the self-employment tax. Petitioners' argument in support of this contention is composed of two distinct facets. First, petitioners maintain that the law requires an individual to offer consulting services to more than one client or customer before he will be deemed to be engaged in the trade or business of consulting. Since petitioner never offered his services to any individual or entity other than Guilford Mills, petitioners argue that, as a matter of law, petitioner may not be deemed to have been conducting a consulting business during the years in issue. Petitioners rely on *Barrett v. Commissioner*, 58 T.C. 284 (1972); *Gentile v. Commissioner*, 65 T.C. 1 (1975); and *Barnett v. Commissioner*, 69 T.C. 609 (1978), as authority for this proposition.

Petitioners also maintain that a finding that an individual is engaged in a trade or business of consulting requires an initial and subsidiary finding that the individual actually rendered substantial consulting services during the years concerned. Since petitioner was not requested by Guilford Mills to perform any consulting services during the years in issue and therefore performed none, petitioners contend that any finding that petitioner was conducting a consulting business during such years would be unwarranted. Petitioner cites no case that would directly support such a proposition.

Respondent, on the other hand, maintains that the fact that petitioner offered no consulting services to individuals or entities other than Guilford Mills should not be dispositive of the issue of whether petitioner was engaged in the consulting business. In support of this contention, respondent relies upon *Steffens v. Commissioner*, 707 F.2d 478 (11th Cir. 1983), revg. and remanding a Memorandum Opinion of this Court; *Grosswald v. Schweiker*, 653 F.2d 58 (2d Cir. 1981); and *Ditunno v. Commissioner*, 80 T.C. 362 (1983), appeal dismissed (6th Cir., Sept. 13, 1983). Moreover, respondent argues that the fact that petitioner was obligated under the consulting agreement to stand ready to render consulting services to Guilford Mills upon its request, and was generously compensated for such availability, whether called upon or not, places petitioner in the consulting business irrespective of whether or not Guilford

Mills actually called on petitioner to perform services during the years in issue. For the reasons stated below, we agree with respondent.

Initially, petitioners' contention that a taxpayer must offer consulting services to more than one client or customer as an absolute prerequisite to a finding that such taxpayer is engaged in a trade or business of consulting, no longer has merit. The legal premise underlying this contention was rejected by this Court in the recent case of *Ditunno v. Commissioner, supra.*

In *Ditunno*, we were presented with the question of whether a full-time gambler should be deemed to be engaged in the trade or business of gambling.[3] Respondent, focusing on the qualitative nature of the activity concerned, argued that a taxpayer could never be engaged in a trade or business of gambling for his own account because such a taxpayer does not hold himself out to others as offering goods or services. Respondent relied upon our decision in *Gentile v. Commissioner, supra,* wherein we held that a taxpayer must hold himself out to others as offering goods and services as a necessary incident to trade or business classification of his activity.

After an exhaustive review of the law regarding what constitutes a trade or business, we concluded in *Ditunno* that the trade or business test articulated in *Gentile v. Commissioner, supra,* was overly restrictive. We stated:

> [In *Gentile*] [w]e defined carrying on a trade or business to be "that which 'involves holding one's self out to others as engaged in the selling of goods or services.' " In this definition, we adopted language used by Justice Frankfurter in his concurrence in *Deputy v. du Pont,* 308 U.S. 488, 499 (1940). We found that when the taxpayer in *Gentile* made his bets, he did not hold himself out as offering either goods or services. Therefore, we concluded that he was not in the trade or business of gambling.
>
> Upon reconsideration, we find that the *Gentile* test, which focuses on the provision of goods and services, is overly restrictive. The proper test of whether an individual is carrying on a trade or business requires an examination of all the facts involved in each case. *Higgins v. Commissioner,*

---

[3]At issue in *Ditunno v. Commissioner,* 80 T.C. 362 (1983), appeal dismissed (6th Cir., Sept. 13, 1983), was whether the taxpayer's gambling losses were properly characterized as deductions from gross income under sec. 62(1) or as itemized deductions under sec. 63. Resolution of the issue determined whether the taxpayer's gambling losses were items of tax preference for purposes of computing the minimum tax under sec. 56 or sec. 55.

312 U.S. 212 (1941). * * * [80 T.C. at 366–367; other citations and fn. refs. omitted.]

We therefore concluded in *Ditunno* that:

failure to provide or offer goods and services to others is not sufficient by itself to find that a taxpayer is not carrying on a trade or business. * * *

\* \* \* \* \* \* \*

Accordingly, *Gentile* will no longer be followed.[13]

---

[13]Our adoption of the goods-and-services test in *Gentile* was consistent with our opinion in *Barrett v. Commissioner*, 58 T.C. 284, 288 (1972); therefore *Barrett* will also not be followed in the future to the extent that it holds that the offering of goods or services is essential to the conduct of a trade or business. [80 T.C. at 370–371.]

*Barrett v. Commissioner, supra,* referred to in note 13 of *Ditunno,* and relied upon by petitioners herein, applied the "holding out" trade or business test under facts similar to those presented in this case and held that a taxpayer could not be deemed to be conducting a consulting business where he offered consulting services to only one client or customer. However, for reasons fully articulated in *Ditunno,* we have now rejected the notion that a taxpayer must offer goods or services to more than one client or customer as a necessary incident to his being deemed to be conducting a trade or business. The proper focus in arriving at this determination is not solely the volume of clients or customers an activity generates. Rather, the determination must be made on the basis of all of the facts and circumstances of a particular case. Accordingly, petitioners' attempt to derive support from *Barrett v. Commissioner, supra, Gentile v. Commissioner, supra,* and *Barnett v. Commissioner, supra,*[4] must be rejected.[5]

Petitioners argue that even if the facts-and-circumstances test is applied in this case, petitioner should not be deemed to

---

[4]Although in *Barnett v. Commissioner*, 69 T.C. 609 (1978), we found the taxpayer to be engaged in the consulting business, we did so only after explicitly finding that the taxpayer had failed to prove that he had not offered services to more than one individual or entity. Petitioner attempts to distinguish the present case from *Barnett* on the basis that petitioner herein has demonstrated that he in fact offered services only to Guilford Mills. However, as discussed *supra,* this distinction is no longer determinative of the issue presented herein.

[5]In so holding, we bring ourselves in line with the views of the Second and Eleventh Circuit Courts of Appeals. See *Grosswald v. Schweiker*, 653 F.2d 58 (2d Cir. 1981); *Steffens v. Commissioner*, 707 F.2d 478 (11th Cir. 1983), revg. and remanding a Memorandum Opinion of this Court. Both of these cases found taxpayers who offered consulting services to only one client to be conducting a consulting trade or business.

have been conducting a trade or business during the years in issue. Petitioners, in this regard, maintain that the only relevant factor to be considered is the extent to which services were actually performed under the consulting contract during the years in issue. They maintain that since petitioner was not requested to render services during the years in issue, he may not be deemed to have been conducting a consulting business during those years.

We cannot accept petitioners' unidimensional view of the facts, nor the legal conclusion they would have us draw therefrom, for two fundamental reasons. First, petitioners' contention that petitioner's failure to actually render services during the years in issue mandates a finding that he was not conducting a consulting business during those years is erroneous. Active participation is not an absolute prerequisite to a finding of a trade or business where, as here, the taxpayer's activity or inactivity is caused by forces outside his control. See, e.g., *Morley v. Commissioner*, 8 T.C. 904, 916 (1947). Secondly, the analysis petitioners propose ignores the provisions of the consulting contract pursuant to which the payments in issue were made.

We think that where payments are made pursuant to the terms of a personal service contract which requires the payee to perform services only at the specific request of the payor, the question of whether the payee is conducting a trade or business depends not upon the extent to which the payee was actually called upon to perform under the contract, but rather depends upon the extent to which he was obligated to perform if called upon. As we stated in *Barrett v. Commissioner*, 58 T.C. at 289:

> In the present case, * * * the nature of the compensation in question depends upon the terms of the contract as originally entered into and is not altered by the subsequent inaction of the petitioner. Under the [consulting] agreement * * * petitioner was, and continues to be obligated to render advisory and consulting services * * * whenever called upon to do so. In view of this continuing obligation, the fact that he has rendered no advisory or consulting services * * * or has been requested to do so, is immaterial.[6]

---

[6] In *Barrett*, we thus examined the terms of the contract rather than the extent of services actually performed thereunder in determining whether the taxpayer was conducting a consulting business. Upon such examination, we concluded that the taxpayer was not conducting a trade or business because the contract specifically prohibited the taxpayer

See also *Steffens v. Commissioner, supra,* holding a taxpayer to be in the trade or business of consulting despite the fact that no consulting services were actually performed by the taxpayer during the years at issue therein.

Under the terms of the consulting contract in this case, petitioner was obligated to render consulting services to Guilford Mills, upon reasonable notice, whenever Guilford Mills required and so long as petitioner was physically and mentally able. Petitioner was provided with an office for use in the discharge of his duties. In return for thus obligating himself, petitioner was paid $40,000 per year and was also provided with the use of an automobile.[7]

During the initial years of the consulting contract, petitioner was requested to, and did, render substantial services to Guilford Mills pursuant to the terms of the consulting contract. Although Guilford Mills found no occasion to call on petitioner for his services during the years in issue, petitioner stood ready and able (for all this record shows) to discharge his continuing obligation under the contract and received the annual $40,000 payments therefor.

Under these facts, it is clear that petitioner entered the consulting business in 1971 when he obligated himself to perform, and did perform, under the consulting contract. Moreover, in view of petitioner's continuing obligation under the contract during 1977, 1978, and 1979, combined with the fact that petitioner stood ready and able to render services if

from providing consulting services to any individual or entity other than his former employer. As discussed *supra,* the trade-or-business test applied in *Barrett* which required that a taxpayer offer services to more than one client or customer as a necessary incident to trade or business classification of an activity has since been rejected, and *Barrett* will no longer be followed to the extent that it so holds. Nevertheless, *Barrett* continues to have validity to the extent that it holds that the terms of the contract, rather than the services actually performed thereunder, is a prime factor to consider in determining whether an individual is conducting a consulting business.

[7]It is clear from the record that Guilford Mills bound itself under the consulting contract in order to secure petitioner's future services. It is, however, somewhat troubling that the payments to petitioner were to continue under the contract even if petitioner became physically or mentally unable to perform services, for this might be taken to indicate that the payments were for something other than petitioner's promise to perform. However, it has been recognized that a payor may value the services of a particular individual to such a degree as to be willing to commit to payment for a set period regardless of disability of the payee, and where such a provision apparently results from arm's-length bargaining, it may be immaterial. Cf. *Yelencsics v. Commissioner,* 74 T.C. 1513, 1525 (1980); *Wager v. Commissioner,* 52 T.C. 416, 419 (1969); *O'Dell & Co. v. Commissioner,* 61 T.C. 461 (1974). We find this to be the case here.

requested during those years, we must conclude that petitioner remained in that business during those years despite the fact that he was not called upon by Guilford Mills to perform. Petitioner's inactivity during the years in issue was quite clearly caused by forces outside his control rather than any change in his purpose which would suggest abandonment of the consulting business. Cf. *Morley v. Commissioner, supra.*

We therefore conclude that the payments petitioner received during 1977, 1978, and 1979 pursuant to the consulting contract were derived by petitioner from a trade or business carried on by him within the meaning of section 1402(a). As such, these payments were properly characterized by respondent as self-employment income within the meaning of section 1401.

To reflect the foregoing,

*Decision will be entered for the respondent.*