T.C. Memo. 1998-110


UNITED STATES TAX COURT


LARRY JACKSON BEARD AND GLORIA DEAN BEARD, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 17193-95.                    Filed March 17, 1998.


Larry Jackson Beard and Gloria Dean Beard, pro sese.

<u>Martha J. Weber</u>, for respondent.


MEMORANDUM OPINION


PARR, <u>Judge</u>:    Respondent determined deficiencies in

petitioners' Federal income taxes and penalties as follows:

| Year | Deficiency | Penalties Sec. 6663 |
|------|-----------|---------------------|
| 1991 | $4,980.48 | $3,735.36 |
| 1992 | 5,256.73 | 4,144.30 |

All section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. References to petitioner are to Larry Jackson Beard.

After concessions,[1] the issues for decision are: (1) Whether petitioners had unreported income during 1991 and 1992. We hold they did to the extent set out below. (2) Whether for 1992 petitioners are entitled to a claimed dependency exemption for their daughter Jacqueline. We hold they are not. (3) Whether for 1991 and 1992 petitioners are liable for self-employment taxes pursuant to section 1401. We hold they are. (4) Whether for 1991 and 1992 petitioners are liable for fraud penalties pursuant to section 6663, or in the alternative, the accuracy-related penalties pursuant to section 6662. We hold they are not liable for the fraud penalties but are liable for the accuracy-related penalties.

Certain automatic adjustments will be required in the calculation of self-employment taxes, earned income credit claimed for 1992, and related items of a computational nature

---

[1] Respondent concedes that deposits made Jan. 24, 1991, Jan. 16, 1992, Apr. 10, 1992, and July 14, 1992, of $22.16, $250, $1,000, and $600, respectively, are nontaxable. Respondent further concedes that the notice of deficiency incorrectly added $2,100 of cash expenditures for 1991 and failed to give petitioners credit for $1,250 of income reported on their return for 1992.

flowing from our holdings on the above issues.  Accordingly, a decision will be entered under Rule 155.

Some of the facts have been stipulated and are so found. The stipulated facts and the accompanying exhibits are incorporated herein by this reference.  Petitioners resided in Hendersonville, Tennessee, at the time the petition was filed.

General Background

During the years in issue, petitioners maintained a cash hoard in their home.  Petitioners separated their cash by denomination and wrapped it in plastic with rubber bands.  The cash was kept in a wall in their bedroom over some pipes.

Petitioners began accumulating their cash hoard shortly after they were married in approximately 1966.  They preferred to keep this cash on hand because it gave them a sense of security if they needed money in a hurry for an emergency.  Petitioner did this to control the household spending and was responsible for governing the cash hoard.

Petitioner had no set schedule of depositing money to the cash hoard, nor did he keep any records regarding it. Petitioners would get cash (from paychecks, reimbursements from their children for bills paid on their behalf, credit card cash advances, reimbursements from expenses charged for others on their credit card, loans from petitioner's mother, and gambling winnings) and add some to the cash hoard.  Petitioner would carry

a large amount in his wallet and deposit some in the checking account when it was needed to pay each month's bills.

During 1991, petitioner lived primarily on the cash hoard, but he did receive some income from "side work" as a drywaller and painter. In 1992, petitioner returned to his occupation of installing dry wall.

Petitioners filed joint Federal income tax returns for the years in issue. After petitioners' returns were audited for 1991 and 1992, but before their case was to be considered by the Internal Revenue Service (IRS) Appeals Division, they filed amended returns for those years. On their original 1991 return, the only income petitioners reported was $12,500 of gambling winnings from a bingo trip. On the amended 1991 return, petitioners reported additional income of $83 in interest and $1,000 in earnings from "side work". On their original 1992 return, petitioners reported wages of $9,367.30 and gambling winnings of $1,250. On their amended 1992 return, petitioners reported additional earnings of $3,377.

Issue 1. Unreported Income

Utilizing the bank deposit method of income reconstruction, respondent determined that petitioners had unreported income of $18,716 and $16,177 for 1991 and 1992, respectively. Petitioners assert that these deposits constituted gifts, loans, and reimbursements and are thus nontaxable.

Every taxpayer is required to maintain adequate records of taxable income. Sec. 6001. Petitioners did not maintain adequate records from which the amount of their income or Federal income tax liability could be computed. In the absence of such records, the taxpayers' income may be reconstructed by any method that, in the Commissioner's opinion, clearly reflects income. Sec. 446(b); Parks v. Commissioner, 94 T.C. 654, 658 (1990). The Commissioner's method need not be exact but must be reasonable. Holland v. United States, 348 U.S. 121 (1954).

The bank deposit method for computing unreported income has long been sanctioned by the courts. DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), affd. 959 F.2d 16 (2d Cir. 1992). Though not conclusive, bank deposits are prima facie evidence of income. Estate of Mason v. Commissioner, 64 T.C. 651, 656-657 (1975), affd. 566 F.2d 2 (6th Cir. 1977); see also Price v. United States, 335 F.2d 671, 677 (5th Cir. 1964) (the bank deposit method assumes that all money deposited in a taxpayer's bank account during a given period constitutes gross income); Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Jones v. Commissioner, 29 T.C. 601 (1957). Where the taxpayer has failed to maintain adequate records as to the amount and source of his or her income, and the Commissioner has determined that the deposits are income, the taxpayer has the burden of showing that the determination is incorrect. Rule 142(a); Clayton v.

<u>Commissioner</u>, 102 T.C. 632, 645 (1994); <u>Parks v. Commissioner</u>, <u>supra</u>; <u>Estate of Mason v. Commissioner</u>, <u>supra</u>.  Furthermore, the Court of Appeals for the Sixth Circuit, to which this case is appealable, has accepted the bank deposit method of income reconstruction.  <u>Bevan v. Commissioner</u>, 472 F.2d 1381 (6th Cir. 1973), affg. per order T.C. Memo. 1971-312; see also <u>Woods v. Commissioner</u>, 929 F.2d 702 (6th Cir. 1991), affg. without published opinion T.C. Memo. 1989-611.

In challenging respondent's income reconstruction, petitioners introduced evidence that was intended to corroborate their claim that the deposits were due to nontaxable sources.  This evidence primarily consists of their testimony, bank account statements, credit card statements, and canceled checks.  Upon review of the evidence presented, we are persuaded that the source of certain amounts of the deposits were from nontaxable income items, as set forth below.

At trial, respondent stressed the fact that petitioner was unable to exactly match his nontaxable payments received with specific bank deposits.  Petitioner is not required to directly match nontaxable funds to deposits.  If the funds are nontaxable, they are removed from the unreported income determined by respondent.

A. 1991

Except for the following amounts, we hold the deposits are income to petitioners subject to tax pursuant to section 61(a).

During 1991, petitioners made car insurance payments and purchased clothes for two of their children, Jacqueline and Johnathan, for which they were reimbursed. Petitioners provided canceled checks to corroborate their testimony regarding these reimbursements. The amounts represented by these reimbursements in the deposits, therefore, are not subject to tax.[2] On the basis of the record, we are persuaded that for 1991, Jacqueline and Johnathan reimbursed petitioners $1,000 and $700, respectively, for car insurance and $200 each for clothes.

During 1991, petitioners took various trips with certain other individuals. Petitioners sometimes would charge the entire cost of the trip on their credit card, and the other individuals would then reimburse them for their share of the cost. Petitioners testified credibly regarding the reimbursements for these trips and provided credit card statements for corroboration. Patricia Hurst, a travel companion, also testified credibly regarding reimbursements made to petitioners for certain trips. Accordingly, the amounts represented by these reimbursements in the deposits, described more fully below, are not subject to tax.

---

[2]     The reimbursements from Jacqueline and Johnathan for 1991 were a combination of checks and cash. Petitioners and respondent agree that the checks payable to Jacqueline and Johnathan that were deposited into petitioners' account in 1991 are nontaxable. The difference between our determination of the total reimbursement from the children and the agreed-upon amounts in the form of checks is the resulting cash reimbursement.

In March 1991, petitioners traveled to Oklahoma with Steve Taylor (Taylor) to play bingo. Petitioner charged Taylor's airfare and a rental car on his credit card. We find that petitioner was reimbursed $306.12 from Taylor for this trip.

In June 1991, petitioners traveled to Florida on vacation with Taylor and George Hurst (Hurst). Petitioner charged the entire cost of renting the vacation condominium on his credit card. We find that petitioner was reimbursed $337.89 each from Taylor and Hurst for their shares of the rental.

In August 1991, petitioners traveled to Las Vegas, Nevada, with Taylor. Petitioner charged Taylor's airfare on his credit card. We find that petitioner was reimbursed $936 from Taylor for this trip.

From September 24 through October 2, 1991, petitioner took a sightseeing trip through several northern States and Canada with a Mr. Gray (Gray). Petitioner charged the hotel accommodations for this trip on his credit card and was reimbursed by Gray for his share of the expenses. We find that petitioner was reimbursed $150 from Gray for this trip.

Petitioner claims that during 1991 he received a $1,500 loan from his mother. Petitioner provided a copy of the canceled check to corroborate his testimony. We find that the $1,500 represented in the deposits by this loan is not subject to tax.

As stated earlier, petitioners maintained a cash hoard in their home during 1991. Petitioners would deposit money from

their cash hoard to roughly cover each month's household bills. We are persuaded that some of the deposits during 1991 are from the nontaxable cash hoard source; however, we are also convinced that petitioners did not report all of their income, i.e., some of the cash kept at home was includable in their income. Only after they were audited did petitioners file amended returns showing additional income. On the basis of the entire record, including the fact that petitioners lived primarily on these savings during 1991, we find $5,000 to be a reasonable appraisal of deposits from the nontaxable cash hoard.

In sum, we find that $10,667.90 of the 1991 bank deposits is nontaxable and must be removed from the unreported income determined by respondent.

B.  1992

Except for the following amounts, we hold the deposits are income to petitioners subject to tax pursuant to section 61(a).

Petitioners were reimbursed in 1992 by their children Jacqueline and Johnathan for car insurance payments made on their behalf of $1,000 and $700, respectively. Petitioners were also reimbursed $200 from both Jacqueline and Johnathan for clothes during 1992. Those reimbursements are nontaxable.[3]

---

[3] The reimbursements from Jacqueline and Johnathan for 1992 were a combination of checks and cash. Petitioners and respondent agree that the checks payable to Jacqueline and Johnathan that were deposited into petitioners' account in 1992 are nontaxable. The difference between our determination of the
(continued...)

In August 1992, petitioner took out a $1,000 cash advance on his credit card. Petitioner provided a credit card statement for corroboration. The amount represented by this cash advance in the 1992 deposits is nontaxable.

Petitioner received loans from his mother during 1992. Petitioner provided a canceled check from his mother of $300. Petitioner's mother also testified credibly regarding cash loans of $500 and $300. The amounts of these loans are not subject to tax.

Petitioners claim that certain amounts of the 1992 deposits are from the nontaxable cash hoard source. On the basis of the entire record, including the fact that both petitioners worked during the year, we find $2,500 to be a reasonable appraisal of deposits from the nontaxable cash hoard.

In sum, we find that $6,700 of the 1992 bank deposits is nontaxable and must be removed from the unreported income determined by respondent.

Issue 2. Dependency Exemption

Respondent determined that petitioners were not entitled to a claimed dependency exemption deduction for their daughter, Jacqueline, for 1992. The reason stated for the disallowance was that petitioners did not establish that they had provided more

---

³(...continued)
total reimbursement from the children and the agreed upon amounts in the form of checks is the resulting cash reimbursement.

than one-half of Jacqueline's support during 1992.  Petitioners assert that they are entitled to the deduction.

Section 151(c)(1) generally allows as a deduction an exemption for each dependent of a taxpayer as defined in section 152.  Section 152(a) provides, in general, that the term "dependent" means certain individuals over half of whose support was received from the taxpayer during the taxable year in which such individuals are claimed as dependents.  Eligible individuals who may be claimed as dependents include, among others, a son or daughter of the taxpayer.  Sec. 152(a)(1).  Section 151(c) further provides that the claimed dependent's gross income for the taxable year must be less than the exemption amount, or if the claimed dependent is a child of the taxpayer claiming the exemption, the child must not have attained the age of 19 at the close of the calendar year or must be a student who has not attained the age of 24 at the close of the calendar year.  Sec. 151(c)(1)(A) and (B).

During 1992, Jacqueline had attained the age of 20 at the close of the year but was a student.  She maintained a part-time job during 1992.  Based on Jacqueline's 1992 return, her gross income from wages was $5,182.93.

Petitioner did not present competent evidence to establish the total support provided to Jacqueline during 1992, and that, of the total support provided, more than one-half of the amount was provided by petitioner.  See Blanco v. Commissioner, 56 T.C.

512, 514-516 (1971).  Although petitioner provided Jacqueline

with an occasional place of abode, some food, and perhaps some

clothing, Jacqueline had other means of support during 1992.  She

earned wages from her part-time job, lived at school, sometimes

purchased food while at home, and reimbursed her parents for

expenses such as car insurance and clothes.  On this record,

petitioner has not established that he provided more than one-

half of Jacqueline's total support during 1992.  Respondent,

therefore, is sustained on this issue.[4]

Issue 3.  Self-Employment Tax

Respondent determined that petitioner's unreported income in

1991 and 1992 was subject to self-employment taxes under section

1401.

Section 1401 imposes a tax on a taxpayer's self-employment

income.  Self-employment income includes the net earnings from

self-employment derived by an individual during the taxable year.

Sec. 1402(b).  Net earnings from self-employment means gross

income derived by an individual from any trade or business

---

[4]    On their original 1991 return, petitioners claimed
their children Jacqueline and Johnathan as dependents.  On their
amended 1991 return, petitioners added another child, James, as a
dependent.  Respondent allowed the dependents as reflected on the
original 1991 return.  Petitioners did not address this at trial;
thus, respondent is sustained on this determination.
    On their original 1992 return, petitioners claimed
Jacqueline as a dependent.  On their amended 1992 return,
petitioners again added James as a dependent.  The exemption for
Jacqueline is denied, as set forth above; however, respondent
concedes the 1992 exemption for James.

carried on by the individual, less allowable deductions attributable to the trade or business, plus certain items not relevant here. Sec. 1402(a). The term "trade or business" for purposes of the self-employment tax generally has the same meaning it has for purposes of section 162. Sec. 1402(c). Thus, to be engaged in a trade or business within the meaning of section 1402(a), an individual must be involved in an activity with continuity and regularity, and the primary purpose for engaging in the activity must be for income and profit. Commissioner v. Groetzinger, 480 U.S. 23 (1987). Whether an individual is carrying on a trade or business requires an examination of all the facts in each case. Higgins v. Commissioner, 312 U.S. 212, 217 (1941). These provisions are to be broadly construed to favor treatment of income as earnings from self-employment. Hornaday v. Commissioner, 81 T.C. 830, 834 (1983).

As stated earlier, petitioners filed amended returns reflecting income from "side work". The income from this "side work" was earned by petitioner for work he performed as a self-employed painter and drywaller. Those amounts are subject to self-employment tax. Respondent argues that petitioners' additional unreported income is also subject to self-employment tax. Petitioners addressed this issue indirectly at trial when they claimed all of their bank deposits were nontaxable. We have resolved above that only certain deposits are nontaxable.

Petitioners bear the burden of proving that they are not liable for self-employment taxes under section 1401. Rule 142(a). Petitioners have not met their burden on this issue. Accordingly, their unreported income for the years in issue is subject to self-employment tax.

Issue 4. Fraud

Respondent determined that petitioners are liable for the fraud penalty pursuant to section 6663 for the years in issue. Petitioners assert that they are not liable for the penalty.

The existence of fraud is an issue of fact to be determined from a consideration of the entire record. Stratton v. Commissioner, 54 T.C. 255, 284 (1970); Otsuki v. Commissioner, 53 T.C. 96, 105-106 (1969). Respondent has the burden of proving fraud and must affirmatively establish its existence by clear and convincing evidence. Sec. 7454(a); Rule 142(b); Stone v. Commissioner, 56 T.C. 213, 220 (1971); Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Fraud means actual, intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing. Candela v. United States, 635 F.2d 1272 (7th Cir. 1980); Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Mitchell v. Commissioner, 118 F.2d 308 (5th Cir. 1941), revg. 40 B.T.A. 424 (1939); Wilson v. Commissioner, 76 T.C. 623, 634 (1981), supplemented by 77 T.C. 324 (1981). The Commissioner must show that the taxpayer intended to evade taxes by conduct calculated to conceal, mislead, or otherwise prevent

the collection of taxes.  <u>Stoltzfus v. United States</u>, <u>supra</u>; <u>Marcus v. Commissioner</u>, 70 T.C. 562, 577 (1978), affd. without published opinion 621 F.2d 439 (5th Cir. 1980).

Fraud is never imputed or presumed, and courts should not sustain findings of fraud upon circumstances that at most create only suspicion.  <u>Olinger v. Commissioner</u>, 234 F.2d 823, 824 (5th Cir. 1956), affg. in part and revg. in part T.C. Memo. 1955-9; <u>Davis v. Commissioner</u>, 184 F.2d 86, 87 (10th Cir. 1950); <u>Green v. Commissioner</u>, 66 T.C. 538, 550 (1976).  Mere suspicion does not prove fraud, and the fact that the Court does not find the taxpayer's testimony wholly credible is not sufficient to establish fraud.  <u>Shaw v. Commissioner</u>, 27 T.C. 561, 569-570 (1956), affd. 252 F.2d 681 (6th Cir. 1958); see also <u>Cirillo v. Commissioner</u>, 314 F.2d 478, 482 (3d Cir. 1963), affg. in part and revg. in part T.C. Memo. 1961-192.

Section 6663(a) provides generally that, if any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 75 percent of the portion of the underpayment that is attributable to fraud.  Under section 6663(b), if the Commissioner establishes that any portion of an underpayment is attributable to fraud, the entire underpayment shall be treated as attributable to fraud, except with respect to any portion of the underpayment that the taxpayer establishes (by a preponderance of the evidence) is not attributable to fraud.  Two elements must be satisfied before a

taxpayer may be held liable for the fraud penalty: The Commissioner must prove an underpayment of tax, and the Commissioner must prove that at least a part of the underpayment is attributable to fraud. Stoltzfus v. United States, supra; Petzoldt v. Commissioner, 92 T.C. 661, 699 (1989). As set forth above, we have calculated an underpayment of tax for each of the years at issue. The remaining question is whether any part of the underpayment for each year is attributable to fraud.

Fraud, as noted earlier, is an intentional wrongdoing with a specific intent to evade a tax believed to be owed. The existence of fraud is a question of fact based upon the entire record and reasonable inferences drawn therefrom. Mensik v. Commissioner, 328 F.2d 147, 150 (7th Cir. 1964), affg. 37 T.C. 703 (1962).

The Court has difficulty in concluding, under these circumstances, that petitioner intended to evade taxes by conduct calculated to conceal, mislead, or otherwise prevent the collection of taxes. The Court must conclude on this record that respondent has not carried the heavy burden of proving fraud with clear and convincing evidence. On this issue, we hold for petitioners.

The Court is satisfied, however, on this record, that respondent's alternative determination that petitioners are liable for the accuracy-related penalties under section 6662 for both years should be sustained. Section 6662(a) provides

generally for a penalty of 20 percent of the portion of an underpayment to which the section applies.

Section 6662(b) lists five categories in which an underpayment of tax will be subjected to the penalty, including negligence. "Negligence" includes any failure to make a reasonable attempt to comply with the Internal Revenue Code. Sec. 6662(c). Petitioners underreported their income for the years in issue and failed to keep adequate records. In short, petitioners did not do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioners presented no evidence to show that their underpayments were due to reasonable cause and that they acted in good faith with respect to such underpayments. Sec. 6664(c). The Court is satisfied from the record that petitioners' actions constituted negligence as defined in section 6662(c). Respondent is sustained on the section 6662 penalties for both years.

For the foregoing reasons,

Decision will be entered

under Rule 155.